McBURNEY *vs.* WELLMAN.

Where land is conveyed by an absolute deed, as a security for money due, loaned or advanced, the title of the grantee is that of a mere mortgagee. W. being in possession of land under a written contract with H. for the purchase thereof, which contract had not yet expired, and being entitled to the possession until default should be made, applied to M. to advance for him the unpaid purchase money due to H., and M. accordingly advanced that amount, at the same time agreeing to give W. five years in which to repay the amount, with interest, to take a conveyance of the land from H., for his security, and to give W. a written contract to that effect. The land was thereupon conveyed to M. by an absolute deed.

*Held,* that this was an application, and an agreement, in fact and in legal effect, for a loan for five years on the security of the land, and that M. must be deemed to have in fact taken the title, as between him and W., as a mere security for the sum advanced to W. to pay the balance due to H. on the contract, and as a trustee of the title.

*Held, also,* that if M.'s title was that of a mortgagee, he could not maintain ejectment, against W.; and that although it is inadmissible, at law, to show by parol, that a deed absolute on its face was intended to be, and is, a mere mortgage, yet that such a defense was always admissible in equity;

McBurney *v.* Wellman.

and an equitable defense may now, since the code, be made in a legal action, and is equally available as a legal defense.

*Held* further, that it would be a great perversion of the statute of frauds, to hold that the fraud of M. in getting the title to the land in himself, and then refusing to give W. the written contract he had promised, should deprive W. of the right to show, as a defense to an action of ejectment, what the real transaction was, and to have the appropriate redress.

The statute of frauds is no answer to such a defense, and was never designed to cover up such a transaction. *Per* E. DARWIN SMITH, J.

APPEAL from a judgment ordered at the circuit, in an action of ejectment, on a trial before the court without a jury. The defendant in his answer set up an equitable defense, and prayed for affirmative relief. The following facts were found by the judge, viz: That on or about the 9th of January, 1860, the land in question was owned by John Hunting, who resided in the county of Schoharie, and was possessed and occupied by the defendant under a contract to purchase the same, which had then about one year to run. That the defendant being desirous to get further time to pay for said land, and also to have the owner thereof nearer to his place of residence, on or about the day aforesaid, applied to the plaintiff and proposed to him that he should advance and pay to Hunting the amount then due upon the defendant's contract with said Hunting, and take a conveyance of the land to himself, and then give to the defendant a contract therefor, for the amount so due and paid by said plaintiff, payable at some future day. That the plaintiff assented to this proposition, and it was then and there agreed verbally between the defendant and the plaintiff, that the defendant should procure a deed to be made and executed from said Hunting to the plaintiff and delivered to him, and that the plaintiff should thereupon pay to said Hunting the amount due for the land upon the defendant's contract, and that then the plaintiff should give the defendant a contract for the sale and conveyance of said land to him in five years thereafter, upon payment of said purchase price with interest thereon payable annually, to commence on the first of July

then next. That the defendant, in pursuance of said verbal agreement, caused his written contract with Hunting to be sent and surrendered to him, and a deed conveying the said land to be made out and executed by Hunting to the plaintiff. That said deed was delivered by the agent of said Hunting to the defendant, who took the same and delivered it to the plaintiff, some time in March or April, 1860. That said plaintiff thereupon gave to the defendant a draft for the sum of $284, which was the amount then due upon the defendant's contract, payable to the order of said Hunting, which the defendant caused to be sent and delivered to Hunting, in payment and satisfaction of the purchase price of said land. That it was then agreed verbally between the plaintiff and the defendant, that the defendant should come down to the plaintiff's about the first of July thereafter, and enter into a written contract with the plaintiff for the land according to the terms previously agreed upon, which contract the plaintiff then promised to have prepared and ready for execution at that time. That the defendant did go to the plaintiff's accordingly, at the time agreed upon, ready to sign the agreement on his part, and requested the plaintiff to enter into the said agreement with him. That the plaintiff excused himself from making out and signing said agreement, at that time, on the ground that the deed had been sent to the clerk's office for record, and had not been returned, and he could not describe the premises; and he requested the defendant to call another day, on or about the first of September then next, and he would have the contract prepared, and would then enter into it with the defendant, according to their verbal agreement. That the defendant called upon the plaintiff on the day last named, to enter into the contract, but the plaintiff had not prepared it, and requested the defendant to come at another time, when it should be prepared and signed by him. That the defendant again called, and was again put off in like manner, and from time to time, until finally the plaintiff,

McBurney *v*. Wellman.

upon being urged by the defendant to enter into the contract according to the verbal agreement, denied that he had ever made any such agreement with the defendant, and wholly refused to make or to enter into any such contract with the defendant. That such denial and refusal were before any payment of principal or interest had become due or was to become due by the terms of the verbal agreement. That the defendant, before the commencement of this action, had always been ready and willing, and had repeatedly offered, to execute the agreement on his part according to the verbal agreement, and requested the plaintiff to execute it on his part, which the latter declined and refused to do. That the defendant, before the said verbal agreement with the plaintiff, had been in the possession of the premises under his contract with Hunting six or seven years, and had used and cultivated the same as a farm, and had made betterments and improvements thereon. That the premises, at the time of said verbal agreement, and at the commencement of this action, were fairly worth $700, and that the defendant was in possession of the premises at the time this action was commenced. From the foregoing facts the judge found, as conclusions of law, and decided, that the plaintiff was seised of the premises described in the complaint in fee; that the verbal agreement between the plaintiff and the defendant for the sale and purchase thereof, was void by the statute of frauds, and that the plaintiff was entitled to a judgment against the defendant for the recovery of the possession of said premises with costs of the action. Judgment being entered accordingly, the defendant appealed.

*Geo. T. Spencer*, for the appellant. I. In equity the plaintiff was the equitable owner of the land; the vendor being the trustee of the legal title for him, the vendee. (*Moyer* v. *Hinman*, 3 *Kern*. 180. *Story's Eq*. § 790.)

II. The transaction between the plaintiff and defendant was not a sale and purchase of the land, but a loan of money

by the plaintiff to the defendant, on the security of the legal title ; and it was error in the court not so to find as matter of fact, from the facts proved and not controverted in the case, and as matter of law from the facts found by the decision of the judge. 1. At the time the conveyance was made and the money advanced, the plaintiff had never seen the land, and knew nothing of its value, so far as appears. 2. No mention was made during the negotiation, of the value of the land, nor was any price fixed or talked of; but the agreement was that the plaintiff should advance the amount then due from the defendant to the vendor for the land. 3. The substance of the application by the defendant to the plaintiff was for a loan of money, with a proposition that the plaintiff should have a deed of the land as his security. (*Morris* v. *Nixon*, 1 *How. U. S.* 118.) It is not found, as the plaintiff swears, that he was to have $50, over and above the amount advanced, for his trouble ; and it is therefore to be assumed, that he was to receive only what he advanced, with interest; and it was stipulated when the interest was to commence. 4. The defendant, at the time of the arrangement, was in possession of the land, and nothing was said or done about transferring possession, or the payment of the rent. (1 *Powell on Mortgages*, 284.) 5. The amount advanced was $284; the value of the land at the plaintiff's estimate of $15 per acre, being $628; more than twice the amount advanced. 6. There was no negotiation or transaction between the plaintiff and the owner of the legal title ; and the deed was procured and delivered by the defendant. The plaintiff did not therefore purchase the land of the legal owner. (*Conway* v. *Alexander*, 7 *Cranch*, 241. *Vernon* v. *Bettee*, 2 *Eden.* 110. *Oldham* v. *Halley*, 2 *J. J. Marsh.* 114.) 7. The plaintiff did not purchase the land of the defendant; for the agreement, as found by the court, shows an agreement that the plaintiff, upon receiving the deed, should immediately sell the same land to the defendant for the same sum advanced by him. The object of the transaction could

not therefore be a sale by the defendant to the plaintiff.
8. The money was advanced at the request of the defendant,
and for his benefit, and he was therefore liable upon an
implied undertaking, to repay the money upon his refusal to
enter into the contract, which the decision finds was to be
made by the plaintiff, with him. And had he entered into
such contract, he would have been bound by that to repay
the money. In either case, the transaction creates a debt
which the defendant would be under personal obligation to
pay. 9. But if there was no personal obligation on the part
of the defendant to pay, which could be enforced by action,
there was a right on his part to repay the money as his debt;
and this is sufficient to constitute the deed a mortgage, and
entitle him to redeem. (2 *Am. Leading Cases, part* 2, 435.
*See Coote on Mortgages,* 15, *note a, and cases cited.*)

III. The conveyance, having been procured and made as
security for money advanced by the plaintiff, is in contem-
plation of equity, a mortgage, and the defendant is entitled
to a reconveyance on payment of the debt. But if doubtful
whether a sale or mortgage, it will be treated as a mortgage.
The right is one of pure equity, not only independent of the
agreement between the parties, but paramount to it, and
may be enforced without regard to the form of the con-
veyance, and even in opposition to its terms. (3 *Am. Lead-
ing Cases in Eq. pt.* 2, 432. *Robinson* v. *Cropsey,* 6 *Paige,*
480.) 1. The same result follows when the transaction is
put in the form of a conditional sale, with an agreement for
a repurchase. (2 *Am. Leading Cases, pt.* 2, 435.) 2. To
such an extent has this rule been carried that, *at law,* eject-
ment cannot be maintained upon an absolute conveyance
when it appears, by parol even, that the same was intended
as a mortgage. (*Webb* v. *Rice,* 1 *Hill,* 606. *Swart* v. *Ser-
vice,* 21 *Wend.* 36. *Heister* v. *Madeira,* 3 *Watts & S.* 384.
*Rice* v. *Rice,* 4 *Pick.* 349.) 3. Although these cases have
been overruled, (6 *Hill,* 219,) so far as to hold that, *at law,*
parol evidence cannot be given to prove that a deed, absolute

on its face, was intended for a mortgage, it is now established that, under the code, a party may avail himself of the same evidence, and of the same defences, in what are termed legal actions, as he formerly could in equity. (*Hodges* v. *Tennesee Mutual Fire Ins. Co.*, 4 *Selden*, 416. *Despard* v. *Walbridge*, 15 *N. Y. Rep.* 374.) 4. It is evident from the authorities cited, that although the parties may have put the transaction in precisely the form they intended, yet if this form was used for the purpose of securing the repayment of money advanced merely, the absolute conveyance, given as such security, will be none the less a mortgage. But in this case, the plaintiff refused to put the transaction in the form agreed upon, and was guilty of a fraud, in attempting to convert an absolute deed, intended as security for the repayment of money, into an indefeasible title; and this is ground of relief in equity. (*Goder* v. *Staniford, T. Monroe*, 480. *Story's Eq. Jur.* 1018. *Marks* v. *Pell*, 1 *John. Ch.* 594. *Cook* v. *Mancius*, 4 *id.* 167. *James* v. *Johnson*, 6 *id.* 432. *Clark* v. *Henry*, 2 *Cowen*, 324. 1 *Hilliard on Mortgages*, 529. *Walton* v. *Cronly*, 14 *Wend.* 66. 4 *Kent's Com.* 142–3.) 5. There is no legal obstacle in the way of the plaintiff's foreclosing this deed as a mortgage. It has all the attributes and incidents of a mortgage; among which is the right of redemption on the part of the debtor, and of foreclosure on the part of the creditor. The facts proved in this case and found by the court, will entitle the plaintiff to foreclosure, and equally entitle the defendant to redeem. The plaintiff cannot defeat the right of redemption by denying the facts which give the right. (*Hodges* v. *Tennesee M. & F. Ins. Co.* 8 *N. Y. Rep.* 416.) 6. The judgment should be reversed, with costs, and judgment directed in favor of the defendant with costs; or judgment should be directed that the defendant be at liberty to redeem, on payment of the sum advanced, with interest, and recover his costs of the plaintiff. He had no right to bring an action of ejectment upon a mortgage. (3 *R. S.* 599, 5*th ed.*)

McBurney *v.* Wellman.

*Bradley & Kendall,* for the respondent. The plaintiff was entitled to judgment, upon the proofs and the facts found by the decision of the court; and the judgment should be affirmed. I. When one party paid the purchase money for land, and took a conveyance in the name of another, at common law, before the statute, a trust resulted to the party paying the purchase money. But trusts in such cases have been abrogated by the statute, which provides that the title shall vest in the person named as grantee. (3 *R. S. 5th ed.* 15, § 52. *Garfield* v. *Hatmaker,* 15 *N. Y. Rep.* 475.) It follows, that if the plaintiff had loaned to the defendant the money to pay the purchase money, and taken a deed in the name of the plaintiff, and the defendant had done so, title absolute would have vested in the plaintiff. No trust could have resulted to the defendant in such case, by reason of the statute referred to ; so that a loan would not aid the defendant. If there were a resulting trust in favor of the defendant, that would not affect the plaintiff's right to the possession ; he having the legal title, the right to the possession would follow. (5 *Denio,* 225. 8 *John.* 448.)

II. But clearly there was no loan by the plaintiff to the defendant, and the court has correctly found that there was no loan of the money. 1. By the defendant's own testimony it appears that the money was paid by the plaintiff for the legal title to the premises, the parties contemplating a sale by the plaintiff to the defendant, and the creation between them of the relation of vendor and vendee. The relation of debtor and creditor was not created by the advance or payment of the money. And the creation of that relation was not intended except by the subsequent creation of the relation of vendor and vendee, and then for the purchase money on the contemplated agreement of sale. (*Glover* v. *Payn,* 19 *Wend.* 518–21.) The arrangement in respect to resale to the defendant was not legally available to either party. It was void by the statute of frauds. (*Ryan* v. *Dox,* 25 *Barb.* 440, 447. *Bottsford* v. *Burr,* 2 *John. Ch.*

405.) By the testimony of the plaintiff it also appears that there was no loan to the defendant of the money paid by the plaintiff for the conveyance, and that the relation of debtor and creditor was not thereby created or intended to be created, and the court so found.

III. The deed from Hunting to the plaintiff cannot in any view be deemed a mortgagage. 1. There was no precedent debt or loan of money. The relation of debtor and creditor did not exist between the plaintiff and defendant. The defendant assumed no obligation to pay the money. The void arrangement for sale by the plaintiff to the defendant of the premises cannot aid the defendant. (*Glover* v. *Payn,* 19 *Wend.* 520, 21. *Robinson* v. *Cropsey,* 2 *Edw. Ch.* 138.) 2. The arrangement made between the parties clearly shows that the deed cannot be deemed a mortgage, and the relation of mortgagor and mortgagee was not created or contemplated. To constitute a mortgage, all the elements of a technical mortgage must enter into the arrangement. (*Brown* v. *Dewey,* 2 *Barb.* 28. *Ryan* v. *Dox,* 25 *id.* 440. *Quirk* v. *Rodman,* 5 *Duer,* 285. *Baker* v. *Thrasher,* 4 *Denio,* 493. *Cooper* v. *Whitney,* 3 *Hill,* 95. *Glover* v. *Payn, supra. Eckford* v. *Dekay,* 26 *Wend.* 29. 8 *Paige,* 89. *Holmes* v. *Grant, Id.* 243. *Robinson* v. *Cropsey,* 2 *Edw. Ch.* 138.) The case of *Palmer* v. *Gurnsey,* (7 *Wend.* 248,) is disapproved and overruled by *Baker* v. *Thrasher,* (4 *Denio,* 493,) and *Cooper* v. *Whitney,* (3 *Hill,* 95.) 3. The deed was not made by the defendant, and that alone is a sufficient reason why he cannot be deemed a mortgagor. (*a.*) A deed absolute on its face, when made to secure the payment of a debt due from the grantee, is in effect a mortgage—the grantor being the mortgagor. But in this case it cannot be pretended that the grantor (Hunting) is a mortgagor. He intended to convey, and conveyed the title, and the plaintiff took all he conveyed. The grantor reserved nothing. (*b.*) The defendant formerly had the equitable title subject to the unpaid purchase money. He did not convey or transfer to the plaintiff,

but extinguished it by surrendering his contract to Hunting before the deed was made. The defendant retained no interest in the premises. He cannot have the position of a mortgagor. (*Lathrop* v. *Hoyt,* 7 *Barb.* 63, 64.) 4. The parties never intended that the deed should be a mortgage, but expressly understood that the plaintiff should take the entire legal title, and that he should subsequently, on certain terms, make an agreement to sell that title to the defendant. The performance of that understanding is optional with the parties. 5. The plaintiff, if disposed, could not foreclose. Nobody but he, holds the legal title; the defendant has nothing of estate to be cut off by foreclosure. The only remedy for the plaintiff is that based upon the legal title; and the only form of action is that selected by the plaintiff.

IV. The only question in the case was, who is entitled to the possession of the premises, as between the parties? 1. The plaintiff having the legal title has the right to that possession. 2. The defendant cannot in any view be entitled to the possession. (*a.*) He certainly cannot claim that the oral understanding that a contract for sale should be made, can afford him any right. If the agreement for sale of the premises had been made, that would not have given the defendant any right to possession—there was no understanding that it should contain any provisions giving right to possession. (*b.*) And if the agreement had been made, the default of payment which exists would have given the plaintiff right to full possession. The defendant has not paid or offered to pay the plaintiff any thing. (*c.*) The defendant had no right of possession under the contract made with him by Hunting, as the terms of that contract appear by the evidence. 3. Whether the defendant can or cannot enforce his ,arrangement with the plaintiff to give him a contract is of no consequence in this case, inasmuch as that could not affect the plaintiff's right to possession. Nothing can be considered by way of defense, legal or equitable in this case, except that which operates on the right of possession at the time of the

commencment of this action. No other rights are affected by the judgment.

V. The answer does not state facts sufficient to constitute a defense. And the evidence not only authorized but required the court to find for the plaintiff.

*By the Court,* E. DARWIN SMITH, J. Upon the facts found by the learned judge before whom this cause was tried, without a jury, I am entirely satisfied that his conclusions upon the law are erroneous. From his findings upon the facts, it appears that the defendant had a contract from one Hunting, for the purchase of the land in question, which, at the time of the conveyance from Hunting to the plaintiff, had about a year to run; that the defendant had entered into possession under this contract, and had occupied the land about seven years, and had made valuable improvements on it, cultivated it as a farm, and was then in the actual possession thereof. Under this contract the defendant Wellman had the clear equitable title to the said lots. His interest in the land would have gone, on his decease, to his heirs, as real estate, and his widow, if he had left one, would have been entitled to dower in it. (6 *John. Ch.* 398. *Moore* v. *Burrows,* 34 *Barb.* 174. *Adams* v. *Green, Id.* 179. 10 *id.* 434. 18 *id.* 83.) The contract between Hunting and Wellman is not set out in the case, and its terms do not distinctly appear; but it is stated in the findings of the judge that the defendant went into possession of the premises, under his contract. This finding, I think, implied that he was entitled under the contract to go into possession of the land, and as his occupation for seven years had been acquiesced in by Hunting, and his right to a deed was recognized by him, and the contract had not yet expired, I think it must be considered that he was rightly in possession, and was entitled, as against Hunting himself, to retain such possession till default was made in his payments upon the contract. In this view of the defendant's rights, as between himself and Hunting, the latter could not

McBurney *v.* Wellman.

have maintained ejectment against him, at the time of the conveyance to the plaintiff. Having these clear equitable rights in the land, the defendant applies to the plaintiff to advance and the plaintiff agrees to advance, for him the amount of the unpaid purchase money and give him five years to make payment to him of such amount with interest thereon annually, and to take a conveyance of the land for his security and give him a contract to this effect. This, it seems to me, was clearly an application, and an agreement, in fact and in legal effect, for a loan of $284 for five years on the security of this lot of land. This was the clear object and intent of the parties. The plaintiff never contracted to purchase this land of Hunting, and never had any negotiations with him. The title to this lot was procured by Wellman to be conveyed to the plaintiff, and he advanced the money to Wellman for that purpose. This is very clear upon the evidence and the findings of the judge upon the facts. It must therefore be held that the plaintiff in fact took the title to this land, as between him and Wellman, as a mere security for the said sum of $284 by him advanced to Wellman to pay off the contract to Hunting and as a trustee of the title. Where land is conveyed by an absolute deed as a security for money due, loaned or advanced, it is well settled that the title of the grantee in such deed is that of a mere mortgagee. (4 *Kent*, 142. 2 *White & Tudor's Leading Cases in Equity*, 430, *and cases there cited.*) If the plaintiff's title is that of a mortgagee, then he cannot maintain ejectment. (2 *R. S.* 312, § 57.) But this is an action at law, and it has been held not admissible, at law, to show by parol that a deed absolute upon its face was intended to be and is a mere mortgage. (*Webb* v. *Rice*, 6 *Hill*, 219.) But it was always admissible in equity to show by parol that an absolute deed was intended to be a mortgage; and an equitable defense may now, since the code, be made in a legal action, and is just as available as a legal defense, (*Dobson* v. *Pearce*, 2 *Kern.* 156; *Crary* v. *Goodman*, *Id.* 266; *Des-*

*pard* v. *Walbridge*, 15 *N. Y. Rep.* 374; and *Hodge* v. *The Tennessee Insurance Co.*, 4 *Seld.* 416;) the rule in *Webb* v. *Rice* has ceased to be of any practical consequence, if the equitable defense is spread upon the record so as to let in the parol proof, and such is the case in this action. If Wellman had had the legal title and had conveyed it to the plaintiff as security for the said sum of $284, it is perfectly well settled that he might claim to redeem the land, in equity, by offering to pay the money, and might show by parol that the deed was intended as a mortgage. I cannot see that it makes any difference in principle that Hunting held the title to the land in trust for Wellman, and he procured him to convey it to the plaintiff. It is just as much an absolute deed, in form given to secure a debt or a loan of money, in one case as in the other. Wellman was a debtor for the money loaned. The money was not purchase money, but money lent and advanced for the benefit of Wellman. It is in principle within all the cases where equity has held an absolute deed to be a mortgage, and given relief against it as such. The case was disposed of at special term as purely ······ one of law, and upon the ground that the parol agreement proved was void by the statute of frauds. In the case of *Taylor and others* v. *Luther*, (2 *Sumner*, 232,) Judge Story, in a similar case, speaking of the statute of frauds, says: "Nothing is better settled than that the true construction of this statute does not exclude the enforcement of parol agreements respecting the sale of lands in cases of fraud; for as it has been very emphatically said, that would make a statute, purposely made to prevent frauds, the veriest instrument of fraud." If the real agreement, found to be proved between these parties, had been carried into effect, the defendant's rights would not have rested in parol. He would have had a clear written contract declaring his rights. It would be a great perversion of the statute to hold that the fraud of the plaintiff in getting the title to this land, and then refusing to give to the defendant the written contract contemplated,

McBurney *v.* Wellman.

should deprive the defendant of the right to show what the real transaction was, and to appropriate redress. In 4 *Kent's Com.* 143, it is said that "parol evidence is admissible, in equity, to show that an absolute deed was intended as a mortgage, and that the defeasance had been omitted or destroyed by fraud, surprise or mistake." And in the case of *Taylor and others* v. *Luther,* (2 *Sumner, before cited,*) Judge Story, referring to this statement of Chancellor Kent, says: "It is the same if it [the defeasance] be omitted by design upon mutual confidence between the parties; for the violation of such an agreement would be a fraud of the most flagrant kind originating in an open breach of trust, against conscience and justice." This remark of Judge Story describes and applies to this case very clearly. The fact that Wellman has no written contract declaring his rights, is part of the wrong and fraud of which he complains, and which calls for the equitable interposition of this court. He makes out a clear case of fraud on the part of the plaintiff in seeking, under guise of friendship and confidence, to get title to his farm and thereby deprive him of it; and this is not denied by the plaintiff, but he trusts entirely to the statute of frauds as an answer to this defense. It is, in my opinion, utterly unavailable for such purpose, and was never designed to cover up such a transaction. The defendant established a clear equitable defense to the plaintiff's action, and this, as we have before seen, is just as available and complete as if it were a legal defense. The complaint should have been dismissed at the special term upon this ground. The judgment should now be reversed, and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, September 5, 1864. *J. C. Smith, Welles* and *E. Darwin Smith,* Justices.]