UMFREVILLE *et al.*, appellants, v. KEELER *et al.*

*Deed — conveyance to " heirs " — equitable mortgage — constructive notice.*

A grantor, by deed, conveyed to " E. U., wife of A. U., and her heirs, the children of said A. U." *Held*, that E. U., and the children then living of A. U. and E. U., took as tenants in common.

The owner of a farm conveyed it to her son's wife and children, subject to a mortgage. The mortgage being foreclosed, J. S. purchased the place at the foreclosure sale, in pursuance of a verbal agreement between him and the son of the grantor, that he (J. S.) should hold the title for such wife and children, and should reconvey when the moneys advanced by him, interest and expenses, should be repaid, and an individual account against the son should be paid; for which account he should have a lien upon the farm. *Held*, that the title of J. S. was that of a mortgagee only, the equity of redemption and the title still remaining in those who possessed it before the foreclosure. The son having no interest in the premises had no authority to create a lien upon it to secure the account, and J. S. was bound to reconvey upon being re-imbursed for the amount of his advances and interest, with a reasonable compensation for his time and trouble.

J. S. had conveyed the farm to a third party, while the original owners still continued in possession. *Held*, that such possession was sufficient notice to the purchaser that the interest of J. S. was that only of a mortgagee.

APPEAL by plaintiff from a judgment for defendants entered upon the report of a referee. The material facts appear in the opinion.

*Abram Thorn*, for appellants, cited *Peabody* v. *Fenton*, 3 Barb Ch. 451; *Roof* v. *Stafford*, 7 Cow. 179; 9 id. 626; 2 Kent's Com. 234, 236, 635.

*Alonzo Tanner* and *L. L. Lewis*, for respondent, cited *Luddington* v. *Toft*, 10 Barb. 447; *Clark* v. *Brooks*, 2 Abb. N. S. 407; *Forrest* v. *Forrest*, 25 N. Y. 501; *Clapp* v. *Fullerton*, 34 id. 190; *Schenck* v. *Dart*, 22 id. 420; Story's Eq. Jur., § 64, note *e*, and cases cited.

TALCOTT, J. Patty Umfreville, the mother of the plaintiff, Almon Umfreville, the mother-in-law of Elizabeth, and the grandmother of the other plaintiff, was the owner of the premises described in the complaint, consisting of a farm situated in the

county of Erie, and containing about fifty acres. In January, 1862, Patty mortgaged the premises to one Hoyt to secure the payment of four hundred dollars with interest, in one year. In February, 1862, Patty executed and delivered a deed of said premises, which on the face of it purports to be between Patty Umfreville, of, etc., of the first part, "and Elizabeth Umfreville, wife of Almon Umfreville, and her heirs [the children of said Almon Umfreville], of the second part." The deed does not contain the ordinary habendum clause but purports to be a conveyance of the premises of the "parties of the second part, their heirs and assigns forever," and subject to a condition for the payment of the Hoyt mortgage and certain conditions in regard to the support and maintenance of the grantor during her life. A question arising on this deed, is whether it conveyed any interest to the then living children of Elizabeth Umfreville, also the children of the grantor's son Almon.

We are of the opinion that the deed was valid and operative to convey to the said children a then present interest in the property as tenants in common with their mother, and that they took as purchasers under the deed. In consequence of the maxim "*nemo est haeres viventis*," an immediate grant to the heirs of A., A. being alive, is void. As A. being living, there is no person *in esse* who can answer that description, but " child " or "children " is a good description in a deed, so is " wife of a," without any christian name. 4 Greenleaf's Cruise, 462. In this case the description is both as " children" and "heirs," and the maxim in the exposition of deeds "*utile per imitile non vitiatur*" applies. Ordinarily the word "heirs" in a deed would be construed in its technical sense. And a grant to a man and his heirs would operate to convey a fee to the person named, and the heirs would take no interest. It is laid down by Washburne that " a deed to the heirs of J. S., who is alive, is void, unless there is something in the deed itself which shows that by ' the heirs ' was meant the children of the person named." Washb. on real Prop., Book 3, p. 240.

The case of *Huss* v. *Stephens*, 51 Penn. St. 282, affords an apt illustration of the principle. The grantor had made a deed to "the heirs" of his living son, but in the consideration clause he stated the consideration to be one dollar, " and the natural love and affection he hath for his grandchildren." The court had previously. held a deed from the same grantor to the heirs of his son

void, upon the ground that there could be no persons answering that description. The deed in the first case did not contain the language in the consideration clause which is above quoted, or any thing of similar import, and upon the effect of the words in the consideration clause the court drew a distinction between the two deeds, and held the one containing those words to be valid and operative to convey a present interest to the grandchildren then living. In the case at bar it is manifest that the testator did not intend to convey the premises to her daughter-in-law, Elizabeth, in such manner as that they might descend to the heirs general of Elizabeth, but intended to confine the interest to the children of her son Almon. No remainder is attempted to be created or limited, and the manifest intent of the grantor, namely, to confer an interest upon her grandchildren, can only be effectuated by holding the grandchildren to be grantees described in the deed as such. If the conveyance had been to "the heirs of Elizabeth Umfreville, children of Almon Umfreville," it is clear, upon the authorities referred to, that the deed would have been valid and operative to convey the premises to the children of Almon and Elizabeth then living. It cannot be less valid and operative because Elizabeth is also one of the grantees, and the consequence is, that Elizabeth Umfreville and her children became the owners, as tenants in common of the premises in question, upon the execution of the deed by Patty Umfreville.

By the death of George Umfreville, one of these children, intestate and without descendants, his father, Almon Umfreville, inherited the one undivided fifth of the property.

From the time of the conveyance by Patty all the parties resided on the premises until the death of Patty. In 1865, the holder of the Hoyt mortgage, pressing for the money secured thereby, Almon Umfreville, in behalf of his wife and children, applied to Joshua Smith for advice and pecuniary aid in the premises, with a proposal that Smith should take an assignment of the Hoyt mortgage, and give the owners of the equity of redemption some further time to pay up the amount and redeem the premises; and they thereupon consulted a lawyer, who advised a foreclosure of the mortgage, and thereupon Smith purchased the Hoyt mortgage and caused the same to be foreclosed, and became himself the purchaser of the premises, and took the deed in his own name, as the referee finds, "pursuant to a verbal or parol agreement between himself and the

plaintiffs, to the following purport and effect: he was to hold the title for three, four or five years, if the plaintiffs required so long a period to redeem, provided the plaintiffs paid him interest annually on his advances, and kept the taxes on the land paid, and at any time within this period he was to re-convey the title to the plaintiffs, when so requested, on being re-imbursed to the amount of his advances, and paid a reasonable compensation for his time and trouble."

Under this agreement, as is held by the court of appeals in several cases, the title acquired by Smith was that of a mortgagee only. *Ryan* v. *Dox*, 34 N. Y. 307; *McBurney* v. *Wellman*, 42 Barb. 390; *Carr* v. *Carr*, Court of Appeals, MSS.

The equity of redemption and the title still remained in those who possessed it before the foreclosure of the Hoyt mortgage. *Carr* v. *Carr*, *supra*.

At the time when this arrangement was made, and Smith acquired the apparent title, Almon Umfreville had no interest in the premises. The referee, to a certain extent, recognizes the doctrine that Smith, by the purchase under the arrangement found by him, became in effect a mere assignee of the Hoyt mortgage, and has held that the plaintiffs are entitled to redeem the premises; but in fixing the amount they are to pay, he not only includes the amount with interest due on the Hoyt mortgage, and the taxes which have since been paid by Smith, but a large account in favor of Smith against Almon Umfreville, claimed to have accrued long before the arrangement was made.

Smith seems to have been a tavern and store-keeper in the neighborhood of the farm in question, and claims to have furnished to Almon, prior to the time the arrangement was made about the Hoyt mortgage, various miscellaneous articles, including whisky and provisions, on credit during the year 1865. About the amount of this account there is a dispute between Smith and Almon. A large amount of this account — how much does not clearly appear from the report of the referee — has been allowed by him as a lien upon the premises, which the plaintiffs are required to pay upon the redemption.

This, we think, is unjust and inequitable, even upon the supposition that Almon Umfreville agreed that this old debt against him should be converted into a lien upon the premises, and that Smith should, in consideration of the loan and advance to the wife and children, of the amount of the Hoyt mortgage, hold a lien on the

premises for this debt. If Mrs. Umfreville had been free from coverture, and the children adults, and they had agreed that in consideration that Smith would loan and advance to them the amount of the Hoyt mortgage, and give them time to redeem it, that this old and worthless debt should become a lien and incumbrance on their farm, in addition to the Hoyt mortgage, the transaction could scarcely have escaped the imputation of usury. But there is no evidence that Almon was ever authorized to make any such arrangement by the owners of the property, even if their attempt to confer any such authority could have been effectual. The debt had not been contracted on the credit of the premises. Smith knew that Almon Umfreville had no interest in the premises. Patty Umfreville, who had been the owner of the premises, was living upon them in 1865, when the debt was contracted, and her deed to the wife and children had been on record ever since a few days after its execution.

The substance of the arrangement with the wife and children was for a loan or advance for the purpose of taking up the Hoyt mortgage and extending the time for the payment of that debt; and the contrivance, if any such was agreed to by Almon, by which an attempt was made to secure the old debt of Almon to Smith, upon the property of the wife and children without their knowledge or consent, was unjust and fraudulent toward them, and one which Smith had no right to presume that Almon had any authority to make. The agreement, at the time when Smith took the nominal title, does not, by any fair construction, embrace the idea that the debt due from Almon to Smith was to become a lien on the property in the hands of Smith. It is to the effect that Smith was to purchase the mortgage and take the title on the foreclosure, and to re-convey on being re-imbursed the amount of his advances and interest, with a reasonable compensation for his time and trouble. The word "advances" does not by any fair intendment embrace the old debt due, not from the owners of the equity of redemption, but from Almon, who had no interest in the premises.

All that equity requires is, that Smith should be re-imbursed for the money which he paid on the purchase of the Hoyt mortgage, with the expenses of transferring the nominal title, together with the interest and the amount of taxes paid by him on the premises, with interest from the time of payment, with some reasonable compensation for his time and trouble. The defendants Keeler are in no better position than Smith. If Keeler had no actual notice of the

claims and rights of the respective parties, he had full notice in law and equity by reason of the actual and continued possession of the plaintiffs. We think the referee erred in allowing to the defendants the costs of the action.

The right of Smith was that of a mortgagee only. *Carr* v. *Carr, supra.*

Keeler, by the conveyance from Smith with notice, got nothing more in equity than a mortgage; he and Smith not only repudiated the right of the owners of the equity of redemption before the suit was instituted, but undertook to and did, under color of a writ of assistance in the foreclosure suit on the Hoyt mortgage, and in defiance of the plaintiffs' rights to eject them by force, and more than that, when the plaintiffs, through Mr. Thorn, made a full tender of all the amount necessary to redeem, they refused to receive it or recognize any right to redeem. The plaintiffs did all they could be required to do, before the commencement of the suit, to avoid the necessity of a resort to legal proceedings for the purpose of asserting their right to redeem.

The defendants continued to repudiate the plaintiffs' rights after the commencement of the action, and unjustly caused the expense of the entire litigation.

If the foregoing views are correct, the judgment must be modified by deducting from the amount which the plaintiffs are required to pay, in order to redeem the premises, all except the amount paid by Smith on the purchase of the Hoyt mortgage, with the expenses of the foreclosure and sale, and of recording the deed, with interest from the time of the advance, and all taxes which have since been paid by Smith or Keeler upon the premises, with interest from the time of payment, and the sum of twenty dollars, found by the referee as a reasonable compensation for the time and trouble of Smith.

And it is referred back to the referee to make and state upon the basis herein indicated the computation of the amount which must be paid by the plaintiffs to redeem the same; and upon the making and filing of his report, it is ordered that the judgment be modified accordingly, and that the plaintiffs have sixty days within which to pay the redemption money as so adjusted, after notice of the modification of the judgment and the amount so directed to be paid, with costs of appeal to the appellants.

*Ordered accordingly.*