## GRISWOLD and GREEN *vs.* FOWLER and others.

Where, upon the sale of a piece of land, the mortgagor gives a mortgage thereon, to the vendor, for a part of the purchase money, which mortgage describes the land as a single lot or tract, and the mortgagor subsequently runs streets through the land and lays it out in blocks and lots, with the design of selling them for village or town purposes, and causes a map thereof to be made, and sells some of the lots, a judgment creditor of the mortgagor upon a foreclosure of the mortgage, has no right to insist that the mortgagee shall sell the premises in lots, according to the map, instead of selling the whole as one undivided tract, by the description contained in the mortgage.

Nor will the court direct the premises to be sold in parcels, in such a case, as a favor, or on terms, where it appears that the mortgagees have offered to consent to a sale in parcels upon the giving of security against loss thereon, to the amount of only one third of their debt.

By the terms of a mortgage the whole of the mortgaged premises are pledged for the payment of the mortgage debt; and the contract of the parties is that, in case of non-payment, the whole shall be sold. The mortgagor, therefore, cannot, by laying out the mortgaged premises into town lots, bounded upon and intersected by streets, withdraw from the lien of the mortgage the land included in the streets.

APPEAL from an order made at a special term, denying the motion of Peter Cagger, that the plaintiffs and referee sell the mortgaged premises, in parcels, according to a map made by the mortgagor.

*L. K. Miller,* for the respondents.

*J. Van Buren,* for the appellant.

BIRDSEYE, J. The plaintiffs sold and conveyed to the defendant Fowler a tract of land on Staten Island, containing thirty-five acres and one-quarter, and took back from him a mortgage upon the same premises to secure a portion of the purchase money. The mortgage describes the land as a single lot or tract. Subsequently to the giving the mortgage, Fowler proceeded to run streets through the land, and laid it out in blocks and lots, with the design of selling it for village or town purposes. He caused a map of these subdivisions to be made; and has, it would' seem, sold some of the lots laid· down on it; although there are several streets designated on the map, on which no lots have been sold. John O. Sales was a creditor of Fowler, the mortgagor, by a judgment recovered after the date and recording of the mortgage, and, as such, was made a defendant in this action. After the decree in this case, that judgment was assigned to Cagger, who then moved at special term for an order requiring the plaintiff and the referee to make the sale of the mortgaged premises under the decree, in lots according to the map made by Fowler. Several affidavits were read on the motion, from persons who stated that they were acquainted with the mortgaged premises, and that, in their opinions, the same would bring more if sold in lots than if sold in one parcel. The motion was denied; but by the consent of the mortagees, a sale was to be had in parcels, provided the moving party should secure the payment of any deficiency which might arise upon the sale, if made in lots, according to the map. From this order Cagger appeals. In the case of *Lamberson* v. *Marvin,* (8 *Barb.* 9,) it was held that where

Griswold v. Fowler.

lands are mortgaged as one undivided tract, and they are sub-sequently cut up into lots, for the convenient occupation of the mortgagor, or for the purposes of a sale, the mortgagee, upon a foreclosure of the mortgage under the statute, is not bound to advertise or sell in parcels; but may sell the whole premises as one undivided tract or lot, by the description contained in the mortgage. The court added (page 12) that in such a case as was then before it, equity alone could protect the rights of purchasers of separate parcels of the premises, if, indeed, they had any rights as against the mortgagee, except to pay the mortgage, and to be subrogated to his rights against the mort-gagor and the residue of the mortgaged premises, which the court said was doubtful. The rule there laid down related only to the validity of a sale of mortgaged premises thus made in gross. And the present application does not proceed upon the ground that a sale in gross, under the judgment in this action, would be invalid; but that it would be injurious to the interests of the ap-pellant as a junior incumbrancer upon the mortgaged premises. That case, however, shows that a sale of the mortgaged premises by the same description under which they are mortgaged, is a good sale, in a statute foreclosure. It was admitted on the ar-gument that the rule is the same on a judicial sale. But it was contended that this was a proper case for the court to interfere, and upon the facts shown on the motion, to modify the general rule and direct the sale to be made in parcels. The questions presented for decision, then, are whether the appellant has a right to compel the sale to be made in the manner stated in his notice of motion, and if not, whether, as a favor or on terms, the court should, upon the facts appearing on this motion, grant this ap-plication. Both questions, however, may be, and will be con-sidered together.

There are several distinctions to be noted between the facts presented in *Lamberson* v. *Marvin*, and those appearing here. There the mortgaged premises had been sold to various persons, according to the subdivisions, on which houses had been built, which were occupied by the subsequent purchasers. The ap-pellant here is a mere incumbrancer by judgment, upon the

equity of redemption. He has merely a lien upon the premises, or their proceeds, but has no specific interest in one part of the lands more than another, or in any part of them. If there be any purchasers of parts of the premises, subsequent and subject to the mortgage, they have not thought their equities sufficient to warrant an application to the court.

But a much more important distinction is this : In that case the whole of the premises, as mortgaged, were embraced in the lots as subdivided, and would be embraced in the sale if made in parcels. Here, a very considerable portion of the mortgaged premises had been laid out into streets by the mortgagor since he gave the mortgage now being foreclosed ; those streets are designated on the map, according to which it is asked that the sale be made ; and if the application is granted, the mortgagees will be absolutely deprived of that portion of the mortgaged premises ; they will be prevented from subjecting it to the payment of their mortgage debt. By the mortgage under which this sale is to be had, the whole of the mortgaged premises, as well as the parts now laid out in streets as the residue, were pledged for the payment of the mortgage debt. The lien of the mortgage may be discharged by payment of the mortgage debt, or by the consent of the mortgagee. If there be any other method of removing it, I have yet to learn that fact. If the mortgagee can be deprived of that portion of the mortgaged premises, now laid out into streets, which from the map would seem to be about one-tenth of the whole, why may he not be of a still larger fraction ? Why may not the streets be doubled in number and in width ? and what is the limit of the amount which the mortgagee can be compelled to give up in this manner ? If the mortgagor, by laying out streets, can withdraw from the lien of the mortgage a part of the premises, can he take another part for a park or public place—another for a school and another for a church ? And if, on the equity of one party, he must relinquish a portion of his security, shall he surrender another portion on the equity of another ? And this surrender is to be made, not for his own benefit, or for the purpose of paying his own debt, but on the motion of a remote incumbrancer, for the purpose of raising a

Griswold *v.* Fowler.

surplus to be paid over to him. Nothing of that kind can be done. The contract of the parties was, that in case of non-payment the whole of the land should be sold. No court has any power to alter or impair that contract, in any particular, or to direct that only a part of the land shall be sold, and the rest shall be given away, or dedicated to the public.

It is no answer to this reasoning, to say that several witnesses for the appellant give it as their opinion that a sale in parcels would be more advantageous than a sale in gross, and that on the part of the plaintiffs, only one witness gives a different opinion. Some of the witnesses for the appellant say, in their judgment, a sale in parcels would bring sufficient to pay the amount due on the decree; while the witness for the plaintiffs states his belief (a belief which seems founded on very satisfactory reasons) that it would not. All this, however, is mere useless speculation; for nothing but the sale itself will disclose what sum will be realized on the sale. The rights of the mortgagee are absolute and sacred. It is true he holds the land only as security for the payment of his debt; and when that is paid, he has no interest in the premises. If the present application was based on any such offer as the payment of the debt, it would be entitled to the favorable consideration of the court. It is the right of the mortgagee, under his contract, either to have his whole mortgage debt paid, or to have the whole of the mortgaged premises exposed for sale in order to pay it; and when thus exposed for sale, if others do not bid to the amount due him, he has a right to buy in the premises, and the whole of them, in satisfaction of his debt.

Strangers may think, as the appellant and his witnesses seem to do in this case, that it is better for the mortgagee to give away one-tenth of the mortgaged premises, for the purpose of enhancing the value of the residue. Every mortgagee who deems that to be for his interest, will doubtless take that course with his own property. But neither the appellant nor this court can compel other persons to take or to act upon such view, or can judge for the plaintiffs what would best promote their interests. For even if the stranger would give more, at the

sale, for nine-tenths of the premises, laid out in lots, than for the whole land undivided, it by no means follows that the mortgagee would do the same. And, as already said, I think the mortgagee has a clear right to have the whole of the mortgaged premises exposed for sale, and to bid upon them to the full amount of his debt; and in case the money is not otherwise made, then to take back the entirety of the property pledged for the payment of his debt. It may be urged, however, that this interference with the vested rights of the plaintiffs is more apparent than real, and that by proper provisions in the terms of sale, any such interference may be prevented. Is this so? The sale in parcels can be had only in one of two ways; the one is, by selling the property in lots, but expressly reserving and providing in the terms of sale, that if, by a sale of the several lots, the amount due on the decree be not realized, then that the referee proceed to sell that part which on the map is designated for streets, disencumbered of any dedication of the same for streets. No court would ever order any such sale as that to be made; for no person would buy a lot, if he was liable to be deprived of all access to it by these streets, in case of a failure to raise the whole amount of the debt by a sale of the separate lots. Such a provision would enable the mortgagees to buy the whole land in separate parcels at their own prices. Besides, would any such reservation be effectual? Would not the purchaser of one of these lots, if the plaintiffs should purchase the surrounding premises, be entitled to a way of necessity over them, that he may have access to his land, and derive some benefit from it? (*See Holmes* v. *Seely,* 19 *Wend.* 509, 510, *and cases there cited.*) The doubt that might exist on that point, is a sufficient reason for not directing any such sale to be made. The other method of conducting the sale would be by omitting to make any such reservation of the right to sell the streets and make good any deficiency. If that reservation was not made, but the map was expressly referred to and made a part of the conditions of sale, and of the conveyances to the purchasers, then it is clear the plaintiffs

Griswold v. Fowler.

would lose the right to sell the whole premises, however necessary that part of the mortgaged premises might be to complete the satifaction of their debt; and if all reference to the map were omitted from the terms of sale, it is by no means clear that the same result would not follow. At any rate, these relative rights and equities of the purchasers of some of these lots, and of the plaintiffs as purchasers of the residue, and of the streets, would be such as to prevent this court from interfering, as we are now asked to do by the appellant, if we have any discretion to exercise upon the subject.

If it be objected that this is giving an undue advantage to the mortgagee, or is harsh to his debtor, it is a sufficient answer to say, such is the contract the parties have made. If valid, the court must enforce it. There our power ends.

It may be that this is one of a not unfrequent class of cases where the party who has fallen into difficulty from want of sufficient care to protect his own rights in the bargain, has appealed to the law, unsuccessfully, for redress. The hardship of such cases has never yet induced the court to make new bargains for the parties, to assume powers which it does not possess, or to do acts which are contrary to the dictates of justice, or the obligations of law.

It is not intended to intimate that in this instance there is any wish or design on the part of the plaintiffs, to take an unfair advantage, or to prevent the mortgaged property from being sold to what they honestly believe the best advantage. I am abundantly satisfied that their conduct here negatives any such suspicion. For they consented to waive the pre-payment of their whole debt, to which they would have been entitled in case of an ordinary subrogation of another person in their stead, and on being secured against any loss by a sale in parcels, to permit the sale to be made in that manner. When it is considered that the mortgage debt is now upwards of $60,000, and that the appellant seeks to compel them to raise that sum by the sale, in separate parcels, of vacant lots on Staten Island, I think they have done far more than in equity could have been

required of them, in offering to take security to the amount of only one-third of their debt against loss from a sale in parcels. The order appealed from must be affirmed, with $10 costs.

Eмотт, J., concurred.

Mitchell, P. J., dissented.

Order affirmed.(*a*)

[Kings General Term, March 5, 1857.    *Mitchell, Birdseye* and *Emott,* Justices.]

(*a*) An appeal from this decision was taken to the court of appeals, which appeal was dismissed at the April term, 1857.