JUDIAH ELLSWORTH, Appellant, *v.* HANSFORD N. LOCKWOOD, and others, Respondents.

A mortgagee is not justified in selling the whole mortgaged property in one parcel (on a statutory foreclosure), when one standing in the position of junior mortgagee, or as owner of the property, requests a sale in parcels, and offers, in good faith, to bid the amount of the mortgage debt, costs and expenses upon a specified parcel, so situated that it can be conveniently sold and conveyed separately, although the premises are described in the mortgage as one tract. Such a sale will be set aside in a court of equity. (EARL, Ch. J., LOTT and INGALLS, JJ., contra.)

On a purchase of real estate, B. (the purchaser), gave to the defendant L. (the vendor), a mortgage for a portion of the purchase money, and the plaintiff under an arrangement with B., gave his note, indorsed by M. in payment of the balance. At the same time B. delivered to M. a conveyance of the premises, absolute in terms, and M. gave the plaintiff a writing to the effect that he held the title as security for such indorsement; and, if the plaintiff paid the note, he would transfer the title to him. The plaintiff subsequently paid the note, and also obtained from B. a conveyance of the equity of redemption. The defendant, L., commenced a statutory foreclosure of his purchase money mortgage, whereupon the plaintiff showed him the defeasance signed by M. and the deed to himself from B. offered to pay the amount due and costs, and demanded an assignment of the mortgage.

*Held* (LOTT, HUNT and SMITH, JJ., *contra*), that the plaintiff was not in the position of surety for the mortgage debt, and was not entitled to an assignment. He could only pay the mortgage and have it discharged.

Even if he could be regarded as assignee of the equitable mortgage of M., he would be subrogated by law to the rights of the mortgagee, upon paying the mortgage, without an assignment. (SUTHERLAND, J.)

(Argued January 11th, 1870, and decided March 18th, 1870.)

THIS is an appeal from a judgment of a General Term of the Supreme Court, in the fourth district, affirming a judgment in favor of the defendants, entered upon the report of a referee.

The action was an equitable one, commenced against Lockwood, Ketchum, Joslyn and Mott, to set aside the sale of certain premises, situate in the county of Warren, made on the statutory foreclosure of a mortgage, and to compel an assignment of the mortgage to the plaintiff on his paying the amount due thereon, or that the same be discharged and the plaintiff recover the land in question, upon paying the amount found due, if anything, upon an accounting of the rents and profits received, if anything. No evidence was introduced on the trial on the part of the defendants. The following facts appear in the findings of the referee, and the indisputed evidence:

Previous to the 15th of November, 1849, the defendant, Lockwood, owned the premises. On that day the plaintiff and one Brady purchased them of him for the sum of $1,500, $500 to be paid down, and the remaining $1,000 to be secured by mortgage payable in two equal installments. By an arrangement between the plaintiff and Brady, the deed was given to Brady alone, by Lockwood, and Brady executed to Lockwood the mortgage for the $1,000. It was arranged that Lockwood, instead of the cash, should take plaintiff's note for the $500, indorsed by the defendant, Mott, payable in ninety days. The allegations in the complaint in reference to the interest of the plaintiff in the purchase, are as follows: "The plaintiff avers and charges the truth to be, that the plaintiff was jointly interested with said Brady in the purchase of said premises, and the deed was taken in the name of Brady, but for the benefit of said Brady and plaintiff jointly. The negotiation for the purchase was conducted by the plaintiff, and for his benefit under the following arrangement: That plaintiff should purchase and Brady should occupy the premises for the time being, and ultimately become entitled to one-half on paying a portion of the purchase

money, but which arrangement was subsequently changed and the plaintiff became the owner of said Brady's interest."

At the time Mott indorsed the note, for the purpose of securing him for such indorsement, Brady executed to him a warranty deed of the premises absolute in form, and Mott at the same time executed the following instrument, and delivered the same to the plaintiff:

"It is agreed that Lafayette Mott, holds the title of a farm in Queensbury, Warren county, conveyed to him by Owen Brady, as his security for indorsing a note dated this day, made by Judiah Ellsworth, payable at the Troy City Bank, ninety days after date; and if the said Ellsworth pays up the said note, the title of the said farm is to be conveyed to Ellsworth by Mott; if not, Mott owns the farm.

"L. F. MOTT.

"*November* 15, 1849."

The deed to Mott was recorded in the book of deeds in the clerk's office of Warren county, January 7th, 1850, and Mott's agreement was not acknowledged until January, 1858, and was recorded in February, 1858, in the book of mortgages in the same county. In February, 1850, the plaintiff negotiated a sale of forty-seven acres of the land, which was deeded by Mott at his request, and also at his request was released by Lockwood from the lien of his mortgage.

In 1851, and prior to April 1 of that year, one Perine, an attorney at law residing at Glen's Falls, assuming to act as agent for Mott, entered into an agreement with the defendants, Joslyn and Ketchum, in writing, to sell to them the balance of these lands in separate portions. Mott had authorized Perine to sell the premises, but on what terms or conditions did not appear; and Mott having taken counsel, and being informed that he ought not to convey the premises, inasmuch as Brady or the plaintiff might have some right therein, wrote Perine not to sell the premises, and declined to consummate the said agreement made by Perine, and repudiated it. The defendants, Joslyn and Ketchum, entered into possession of these lands under this

agreement soon after making the same, and retained possession. The note indorsed by Mott not having been paid, he was sued upon it and paid it, and on the 30th of May, 1851, the plaintiff paid him the balance due him on account of the said note and took the note into his possession.

On the 26th day of July, 1851, Brady and wife conveyed by quit claim deed to the plaintiff all their right in and to the said lands, which deed was acknowledged on the same day, but not recorded until February, 1858.

In August, 1852, Lockwood, through Perine as his attorney, commenced by advertisement a statute foreclosure of his mortgage, claiming $541.33 as the balance due, sale to take place November 20th, 1852. The premises were described in the mortgage as one parcel.

About the 15th of November Ellsworth had an interview with Lockwood, when Lockwood stated to him that all he wanted was his money, and that he was willing to assign the bond and mortgage on being paid the amount due him and costs of foreclosure. Ellsworth then informed him that he would get MacGregor to pay him and take the assignment. MacGregor very soon thereafter called on Lockwood to obtain the assignment, when Lockwood said he did not know how much the costs were, but that he would meet him at Glen's Falls on the day of sale and arrange it. On the day of sale, November 20th, Lockwood, Ellsworth, MacGregor and Perine were present at Glen's Falls. MacGregor again offered to give Lockwood the amount due him on the mortgage, to pay the costs and expenses incurred in the foreclosure proceedings, and had the money with him for that purpose, but Lockwood declined to assign the bond and mortgage, saying that Perine had advised him not to assign. The sale was then postponed to the 26th of November, 1852. MacGregor attended again on that day, prepared to pay Lockwood in case he would assign the bond and mortgage. Lockwood was not present. MacGregor attended at the request of Ellsworth. The sale was again postponed to December 10th, 1852. MacGregor, Ellsworth, Perine

and others attended at the place of sale. Lockwood was not present. MacGregor was prepared with the means to pay the amount of the mortgage and costs and expenses of foreclosure, and offered to give Perine, who acted for Lockwood, the amount, in case he would assign or procure for him an assignment of the bond and mortgage. This Perine declined to do. Ellsworth then requested him to put up the premises in parcels, and required that no more should be sold than would satisfy the mortgage debt and cost of foreclosure, and offered to give and bid the amount of the mortgage debt and cost of foreclosure for the south part, next the river, comprising about fifty acres. MacGregor also made the same offer. Perine refused to put up the premises in parcels, and declared that he should sell the whole together, as advertised. No offer was made at any time, either to Lockwood or Perine, to pay and satisfy the mortgage, and Perine, who was Lockwood's agent and attorney in conducting the foreclosure and sale, offered to accept payment and extinguish the mortgage, but the offers were to buy and take an assignment of the bond and mortgage. In making the request of Perine to sell in parcels and in demanding an assignment of the bond and mortgage, plaintiff acted for himself, and also for and in behalf of Mott, who had authorized him so to act.

Perine then put up the premises as advertised, and they were struck off and sold to the defendants, Joslyn and Ketchum, for the sum of $623.14, and the proper affidavits of foreclosure were made and recorded.

The premises were worth at the time of the foreclosure sale, as testified to by the plaintiff, $1,500. The plaintiff on the next day commenced suit for relief against this sale, and for some defect the complaint was dismissed, when this suit was immediately commenced.

*Samuel Hand,* for the appellant, on the point that plaintiff stood in the position of a junior mortgagee, cited *Van Dusen* v. *Worrel* (36 How. Pr. R., 286, Ct. Appls.); *Hodge* v. *Ins.*

*Co.* (4 Seld., 416); *Tibbs* v. *Morris* (44 Barb., 138); *McBurney* v. *Wellman* (42 Barb., 390). That as assignee of an equitable lien he was entitled to demand and receive from the prior incumbrancer an assignment of his mortgage on tendering the amount, he cited *Pardee* v. *Van Anken* (3d Barb., 534); *Johnson* v. *Zink* (52 Barb., 396); 1 Story's Eq. Jur., §§ 494, 500; Evan's Pothier, *n.* 275; *Hayes* v. *Ward* (4 Johns. Ch. R., 130). That the deed from Brady did not merge his equitable mortgage, he cited 1 Hill. on Mort., 338; *Sommer* v. *Wright* (3 Sandf. Ch. R., 157); *Averill* v. *Taylor* (4 Seld., 44). That no more of the property should have been sold than was sufficient to satisfy the mortgage and costs, he cited *Jencks* v. *Alexander* (11 Paige, 619); *Tiernan* v. *Wilson* (6 John. Ch. R., 411); *Hewson* v. *Dygert* (8 Johns. R., 333); *Wood* v. *Monell* (1 Johns. Ch. R., 502); and that the court will interfere, *Genet* v. *Gager* (24 How. Pr. R., 440).

*Stephen Brown,* for the respondents, insisted that plaintiff had no right to an assignment of the Lockwood mortgage, citing *Craig* v. *Wells* (1 Kern., 315); *Halsey* v. *Reed* (9 Paige, 446); *Marsh* v. *Pike* (10 Paige, 595); *Ferris* v. *Crawford* (2 Den., 595); Story's Eq. Jur., 493–499*b.* He also insisted that the sale of the whole property was strictly in pursuance of the provisions of law, citing *Judd* v. *O'Brien* (21 N. Y., 190); *Lamerson* v. *Marvin* (8 Barb., 9); *Griswold* v. *Fowler* (24 Barb., 135); *Cox* v. *Wheeler* (7 Paige, 250).

SUTHERLAND J. The referee found that the deed of Brady and wife, to Mott, was given to secure Mott for his indorsement of the $500 note of the plaintiff.

It was therefore a mortgage in equity. (*McBurney* v. *Wellman,* 42 Barb., 390; *Hodge* v. *In. Co.,* 4 Selden, 416; Laws of 1822, p. 262, § 3.)

The referee found, that when the $500 note fell due, Mott was charged as indorser, and being sued was compelled to pay it, and did pay it, with costs.

The referee found, that the advancing of the $300, by Hudson to Mott, and the giving the note therefor by Mott to Hudson, and the making of the indorsement on the Banker & Hudson contract, was one transaction, and was intended to operate as a payment to the extent of $300, on account of Mott's indorsement and payment of the $500 note, and that subsequently (31st of May, 1851), the plaintiff and Mott looked over, in regard to the moneys paid by Mott, by reason of his indorsement of the note, and that there was found due to Mott $288.35, after allowing the $300 advanced by Hudson to Mott, and that the plaintiff then paid the $288.35, and the same was indorsed, &c.

The complaint alleges that the plaintiff paid the $300 to apply on the note conditionally, and that afterward he paid the $288.35, the balance due on the note, after deducting the $300, and that he has the note in his possession.

Mott is a party defendant, but puts in no answer.

It appears from the plaintiff's evidence, that after the payment of the $288.35, he got the note from Lockwood's attorney.

In view of the foregoing facts, I cannot doubt that Mott should be regarded as having accepted the transaction found by the referee, as to the payment of the $300, and the balance of $288.35, as payment by the plaintiff of the amount which he had been compelled to pay as indorser, and as having consented that the plaintiff should thereby take his position and rights as junior mortgagee.

The fact found by the referee, that after Ketchum and Joslyn got into possession, Brady and wife quit-claimed to the plaintiff the equity of redemption and all rights of action, &c., should not, under the other facts found by the referee, be regarded as impairing or at all affecting the rights and position of the plaintiff as junior mortgagee. It is plain, that it was not the intention of the plaintiff by the acceptance of that quit-claim, to merge his equitable mortgage, and it is plain that it may have been for his interest to keep his equitable mortgage alive.

I think, therefore, that the plaintiff, when, through

McGregor, he made the repeated offers to pay the amount due on the defendant Lockwood's prior mortgage, with costs, and demanded an assignment of that mortgage and of the accompanying bond, should be regarded as having done so, in the position, and with the rights of a junior mortgagee.

The referee finds, that on one occasion, after the commencement of proceedings to foreclose Lockwood's mortgage, Lockwood told the plaintiff that all he wanted was his money, and that he was willing to assign his bond and mortgage on being paid the amount due him and costs of foreclosure; but the referee finds further, that subsequently on two occasions, on the day first fixed for the sale, and on the day to which the sale was postponed, though the plaintiff, through McGregor, was prepared to pay the amount due on Lockwood's mortgage with costs and expenses, and offered to do so, if Lockwood would give him an assignment of his bond and mortgage, yet that Lockwood, though he did not decline to receive the money and satisfy or extinguish his mortgage, did decline to receive it and assign his bond and mortgage.

. The first important question presented by the appeal is, was the plaintiff entitled to an assignment of Lockwood's bond and mortgage, upon payment of the mortgage debt and of the costs and expenses of the foreclosure proceeding?

A junior mortgagee or judgment creditor has a right to protect his lien or interest, by paying a prior mortgage due and payable, and if he does pay it, he succeeds by subrogation, on settled principles of equity, to the rights and interests of such prior mortgagee in the lands, as security for the amount so paid, without any assignment or act of transfer, by or on the part of the prior mortgagee. (2 Story's Eq., § 1024; *Brainard* v. *Cooper*, 10 N. Y., 356; *Silver Lake Bank* v. *North*, 4 John. Ch., 370; *Dale* v. *McEvers*, 2 Cow., 118; *McLean* v. *Towle*, 3 Sandf. Ch., 119; *Burnett* v. *Denniston*, 5 John. Ch., 35.) In the last cited case, it will be noted, that the chancellor did not decree an assignment of the mortgages, though an assignment was requested by the plaintiffs, when they tendered the amount due on the mortgages.

The equitable right to pay and discharge the mortgage debt, after forfeiture, by the terms of the mortgage contract, is called, and is, the right of redemption.

The subrogation or substitution, by operation of law, to the rights and interests of the mortgagee in the land is on and by redemption; and redemption is payment of the mortgage debt, after forfeiture by the terms of the mortgage contract; so that, really, the subrogation or substitution, by operation of law, arises, or proceeds on the theory that the mortgage debt is paid. If the holder of a bond and mortgage assigns them to a party claiming a right to redeem, the latter is subrogated, *by the. assignment*, to the mortgage debt and mortgage security, and to the instruments evidencing such debt and security, and there is no room or occasion for subrogation by operation of law.

A bill or action to have a bond and mortgage assigned to the plaintiff, is not, and cannot be viewed, as a bill or action to redeem. The right of redemption, and of subrogation by law, is inconsistent with the right to an assignment of the debt, and of the evidence of the debt, so far, or inasmuch, as the assignment assumes the continued existence of the debt, and the subrogation by law, assumes its payment.

I have made these very elementary remarks, which may, perhaps, seem somewhat out of place, in view of what was said by a learned judge, in *Pardee* v. *Van Anken* (3 Barb., 536, 537, &c.), to the effect, that the right of the plaintiff in that case to compel an assignment of the mortgage, sprung directly from his right of redemption. See, also, the very able opinion of Judge WOODRUFF, in *Jenkins* v. *Continental Insurance Co.* (12 How. Pr. R., 66), in which it seems to have been assumed by the learned judge throughout, that the right to compel an assignment of the prior bond and mortgage flowed from the right of redemption.

The law seems to have been settled in England, for some time, that, though a *surety*, on paying the debt of his principal, is entitled to the full benefit of all *collateral* securities which the creditor has taken and held as additional security

for his debt, and to an assignment of such collaterals, if an assignment is necessary or convenient to give the surety such full benefit, yet that the surety is not entitled to, and cannot compel an assignment of the debt, or of the instrument by which it is evidenced. (1 Story's Eq., §§ 499, 499*b*; *Copis* v. *Middleton*, 1 Turner & Russ., 224, 231; *Hodgson* v. *Shaw*, 3 Myl. & Keen, 190, 192; *Craythorne* v. *Swinburn*, 14 Vesey, 159.)

For instance, if, when the bond of the principal and surety is given, a mortgage is also given by the principal to the creditors, as additional security for the debt, I understand the law to be settled in England that, upon payment of the debt by the surety, though he is entitled to an assignment of the mortgage, yet he is not entitled to an assignment of the bond.

In this State, as the result of the reported cases, I think the law may be said to be that the surety on payment of the debt is entitled, not only to an assignment or effectual transfer of all such additional collaterals taken and held by the creditor, but also to an assignment or effectual transfer of the debt and of the bond or other instrument evidencing the debt. See *Speiglemyer* v. *Crawford* (6 Paige, 257); *King* v. *Baldwin* (2 John. Ch., 554); *Hayes* v. *Ward* (4 John. Ch., 123); *New York State Bank* v. *Fletcher* (5 Wend., 85); *Mathews* v. *Aiken* (1 Comst., 595).

In the instance above put, of a bond with surety, and an additional security by the mortgage of the principal, I understand the result of the reported cases in this State to be that the surety, on paying the bond, would be entitled to an assignment of both bond and mortgage.

If the party, in a position or with an interest which gives him a right to redeem a mortgage, is also in effect surety, or can be regarded as surety for the mortgage debt, then, on paying the mortgage debt, he is entitled to an assignment, not only of the mortgage, but also of any bond or other instrument evidencing the debt. (*Averill* v. *Taylor*, 8 N. Y., 51; *Johnson* v. *Zink*, 52 Barb., 396; *Cherry* v. *Monro*, 2 Barb. Ch., 618; *Speiglemyer* v. *Crawford*, 6 Paige, 257.)

In *Pardee* v. *Van Anken* (3 Barb.), before cited, though the learned judge held, in the first instance, that the right to the assignment sprang directly from the right of redemption, yet he, in the second instance, held that the junior mortgagee, claiming the right to redeem, was to be regarded in the light of a surety, and held that he had a right to the assignment on that ground.

In *Niagara Bank* v. *Rosevelt* (9 Cowen, 409), there was no question as to the respondents' right to redeem as judgment creditors; but the question was, how much they ought to pay to redeem; whether they should be allowed $3,000 advanced in moneys and goods before assignment to the bank.

The question, whether the respondents were entitled to an assignment, or whether an assignment was necessary to enable them to enforce the mortgage as a security for the amount which they should pay to redeem, does not appear to have been litigated. It is probable that the bank was quite willing to assign, upon payment of the amount which it should be determined the respondents should pay to redeem.

Upon the whole, I do not think it can be said to be the law of this State, that the right to redeem a mortgage, that is, the right to compel the holder of it to accept or receive payment of it, after it is due and payable, carries with it the right, upon such redemption, to an assignment of the mortgage and of the bond or other instrument evidencing the mortgage debt, or of either, unless the redeeming party has the position of surety, or can be regarded as surety for the mortgage debt. As in the principal case, it is impossible in any way to regard the plaintiff as surety for the payment of Lockwood's bond and mortgage, my conclusion is, that he was not entitled to an assignment of them at the times he, through MacGregor, demanded it.

The next and remaining important question presented by this appeal is, had Lockwood, the mortgagee, or Perine, who conducted the proceedings on the day of sale for him, the right, under the circumstances, to put up and sell the whole mortgaged premises together as one tract or parcel?

The mortgage by description covered 281 acres of land, as one tract or body, excepting thereout, by description, three parcels, containing in the aggregate about 102 acres.

The referee finds that, on the day of sale, after the plaintiff, through MacGregor, had offered to pay the amount due on Lockwood's mortgage and the costs of foreclosure, if he would give him an assignment of his bond and mortgage, and the refusal to give such assignment, the plaintiff requested Perine to put up the premises in parcels, and required that no more should be sold than would satisfy the mortgage debt and costs of foreclosure, and offered to bid the amount of the mortgage debt and costs for a certain, then designated, portion of the premises, containing about fifty acres ; that this request was repeated through MacGregor ; that Perine refused to put up the premises in parcels, and declared that he would sell the whole together, as advertised ; and that Perine then put up the premises together, as advertised, for sale, and after crying them, they were sold and struck off to the defendants, Joslyn and Ketchum.

It appears, that the published notice of the foreclosure sale was, that the mortgage would be foreclosed by a sale of the mortgaged premises, omitting the words, "or some part thereof." (See 2 Rev. Stat., 545, § 3.)

The inference from the evidence and the findings of fact is, that at the time of sale, Joslyn and Ketchum were, and had been, sometime before, in the occupation of the mortgaged premises, occupying the same severally, in distinct tracts or parcels, under the Perine contract with them.

It does not appear, nor does the case furnish any ground for supposing, that the designated fifty acres was not so situated, as to have been conveniently capable of being sold, described, and conveyed as a distinct tract or parcel. The only reason given by Perine for refusing to put up and sell the designated fifty acres, as requested, is that to be inferred from his declaration, " that he would sell the whole together *as advertised.*"

The case furnishes no other alleged reason or ground for

not selling the premises in parcels as occupied in severalty by Joslyn and Ketchum.

In my opinion, under these circumstances, it cannot be said that the mortgagee, Lockwood, had a right to put up and sell the whole of the mortgaged premises, as one body or tract, as he did through Perine his attorney. It cannot be said that he had a right to sell any more of the mortgaged premises, than was sufficient to satisfy his mortgage and the costs. (*Jencks* v. *Alexander*, 11 Paige, 619; *Tiernan* v. *Wilson*, 6 John. Ch., 411; *Hewsen* v. *Deygert*, 8 John., 333; *Mohawk Bank* v. *Atwater*, 2 Paige, 61, 62.)

The offer of the plaintiff to bid for the designated fifty acres sufficient to satisfy Lockwood's mortgage debt and costs, if made in good faith, which the findings of the referee will not permit us to doubt, shows that it was a needless sacrifice of the plaintiff's interest as the grantee of the equity of redemption, and as a junior equitable mortgagee, to sell the whole premises as one tract or body, there being nothing in the case to show that the designated fifty acres were not so situated as to be conveniently capable of being sold, described and conveyed as a distinct parcel or tract.

There is nothing in the statute regulating the foreclosure of mortgages by advertisement (2 R. S., 545 to 548), which interfered at all with the right and duty of Lockwood, under the circumstances, to have first put up and sold the designated fifty acres, if (as we must presume in this case) they could conveniently have been sold, described and conveyed as a distinct tract or parcel.

The power of sale in the mortgage authorized a sale of " any part or parts " of the mortgaged premises.

The statute referred to provides (2 R. S., 545, § 3) that the notice of the foreclosure sale shall be a notice, that the mortgage will be foreclosed " by a sale of the mortgaged premises, *or of some part thereof.*"

The sixth section of the statute, regulating the sale (2 R. S., 546, § 6), provides " if the premises (evidently at the time of sale and irrespective of the description of them in

the mortgage) consist of distinct farms, tracts or lots, *they shall be sold separately,* and no more farms, tracts or lots shall be sold, than shall be necessary to satisfy the amount due on such mortgage at the time of the first publication of notice of sale, with interest and the costs and expenses allowed by law."

Considering the express words and the plain and most equitable purpose of this provision of the statute, and the express request of the plaintiff to have the premises put up and sold in parcels, and the situation and occupation of the premises so far and as they are shown by the case, I cannot see how, notwithstanding what was said by a very learned judge in *Lamerson* v. *Marvin* (8 Barb., 9), and which seems to have been recognized and approved, in *Griswold* v. *Fowler* (24 Barb., 135), we can say, that under the circumstances, Lockwood was justified in putting up and selling the whole of the mortgaged premises together, as one body or tract.

But it is not necessary to put our decision of this case on this provision of the statute, for I think, independently of this provision, considering the repeated offers of the plaintiff to bid for the designated fifty acres an amount sufficient to satisfy Lockwood's mortgage debt and costs, that, under the circumstances, and so far as they are disclosed by the case, the judgment should be reversed and a new trial ordered upon the broad principle of equity, which has been referred to.

EARL, Ch. J. (dissenting.) It will not be difficult to dispose of this case, when the relations of the parties are properly understood. The plaintiff and Brady were jointly the purchasers of the land from Lockwood; and, although the deed was taken by Brady alone, it was thus taken for their joint benefit. As between themselves, they were equally liable and bound to pay the purchase price. The plaintiff was to make the first payment by giving his note for the $500, which he was expected to pay. Mott was procured to indorse the note, and to secure him for indorsing, and for no other

purpose, Brady was to give and did give him a deed of the land, absolute in form. When plaintiff paid the note, Mott was to convey the land to him. Brady was to occupy the land, and when he paid his proper portion of the purchase money, he was to have title to one-half of the land.

The deed to Mott, though absolute in form, was undoubtedly only a mortgage and could only operate as such, and Mott could only use it as such. He could not, in case he suffered loss by his indorsement, bring ejectment to recover possession of the land. His only remedy would have been a foreclosure of his mortgage. The deed certainly, and, perhaps, the paper executed at the same time, by Mott to plaintiff, should have been recorded, not in the book of deeds, but as a mortgage in the book of mortgages. Its record in the book-of deeds was of no account. When the note was paid and the mortgage thus became satisfied, a reconveyance was not necessary to vest the title in the mortgagor; but, if the deed had been recorded as a mortgage, it could have been satisfied and canceled if recorded like any other mortgage. If any person had purchased the lands of Mott, knowing that he had taken this deed merely as a mortgage, he would have got no better title than Mott had. But if, relying upon the warranty deed and the record as a deed in the clerk's office, any person, believing that Mott's title was perfect, had purchased the lands of him in good faith, paying value, he would have obtained all the title which the deed purported to give, and Brady would have been estopped from denying his title.

The plaintiff, therefore, did not make the note indorsed by Mott as surety for Brady, and when he paid it, he did not pay a debt which Brady was primarily liable to pay. Hence when he paid the note, he was not entitled, within the cases cited by the learned counsel for the appellant, to be subrogated to the rights of Mott in the mortgage which he held to secure the same debt. But he may have been entitled to a conveyance from Mott of the land, according to Mott's agreement of November 15th, 1849. Whether he was or not, is

now of little importance, as in July, 1851, the equity of redemption was conveyed to him by Brady, and he thus became the legal and equitable owner of the lands, subject to the mortgage to Lockwood. He was in no way liable to pay the Lockwood mortgage. By the conveyance of the land by the mortgagor, without any agreement on the part of the grantee to pay the mortgage, the land became primarily bound in equity to pay the mortgage, and the mortgagor remained merely surety for the payment of the mortgage debt. Hence, the only standing the plaintiff had in reference to this land at the time of the mortgage foreclosure was as owner. As such merely, while he had the right to pay up and discharge the mortgage, he had no right to ask for or compel its assignment to him. There are doubtless cases, where the owner may compel an assignment of a mortgage, as where a mortgage covers a tract of land all equally charged with its payment, and the owner of a portion of it is compelled to pay it; or, where the mortgage covers a tract of land and a portion has become equitably bound to pay the whole, and the owner of the portion not thus bound has been obliged to pay it. In these cases, an assignment may be demanded so that, in the one case contribution can be enforced from the land equally bound, and in the other case, the mortgage may be enforced against the land equitably bound for the whole. Other cases might be instanced. But in every case, to enable the owner of the land to compel an assignment of a mortgage, there must be some equitable reason for it. Here there was none. The only pretense for claiming the assignment was on account of the claim which Ketchum and Joslyn set up to the land. The facts in reference to that claim do not appear very distinctly. It is not clear, upon the evidence or upon the findings of the referee, whether Perine was authorized as the agent of Mott to contract for the sale of the land to them, or whether they knew certainly that Mott's title was merely a mortgage, or whether they knew of the existence of the paper dated November 15th, 1849, executed by Mott. Their claim may, therefore, have been good.

within the principles above laid down, or it may not have been. If it was good, then the plaintiff was not entitled to an assignment of the mortgage for the purpose of annoying or harrassing them. If it was not good, then the plaintiff did not need the protection of the mortgage, and he could have paid up the mortgage and asserted his right in an action of ejectment, or he could have bid the property up to its value at the sale and claimed the surplus. I can, therefore, see no good reason upon which the plaintiff could base a claim for the assignment of the mortgage and no equitable right that was to be worked out by keeping the mortgage alive in his hands. (See *Pardee* v. *Van Anken*, 3 Barb., 534; *Johnson* v. *Zink*, 52 Barb., 396; *Hayes* v. *Ward*, 4 John. Ch., 130; *Halsey* v. *Reed*, 9 Paige, 446; *Marsh* v. *Pike*, 10 Paige, 595; *Ferris* v. *Crawford*, 2 Denio, 595.)

It is true that a short time before the 20th day of November, 1852, Lockwood said he would assign the mortgage; but on the 20th day and at all times after, when the question came up, he said he would not assign the mortgage for reasons which he stated. The sale did not take place until the 10th day of December, and hence it cannot with propriety be said that the plaintiff was misled by what Lockwood said before the 20th of November. He should have come to the sale prepared to protect his rights by bidding, or he should have instituted legal proceedings to secure such relief as he claimed to be entitled to.

It is also claimed that the foreclosure sale should be set aside, because more land was sold than enough to satisfy the mortgage. The land was described in the mortgage as a single tract, and although, since the giving of the mortgage, the land has been divided into two parcels, which were then separately occupied, yet the mortgagee was not bound to sell in parcels, even if he had the right to do so. He could sell the property, as described in the mortgage. (*Lamerson* v. *Marvin*, 8 Barb., 9; *Griswold* v. *Fowler*, 24 Barb., 135; *Cox* v. *Wheeler*, 7 Paige, 250.) If the plaintiff had been the only person besides the mortgagee claiming any interest in the

land, it would most probably have been the duty of the mortgagee, under the circumstances disclosed in this case, to have sold a part only of the land. But here, at the sale, it appears that other parties also set up some claim to the land, and they did not consent to a sale in parcels. The mortgagee was not called upon then and there to decide between these different claimants, but had the right to sell the land in the usual way by the description contained in the mortgage.

The proper place in Warren county to post a notice of mortgage foreclosure is on the Court House door at Caldwell, notwithstanding chapter 176 of the Laws of 1845 authorizing certain terms of the County Court to be held in Glen's Falls.

I therefore reach the conclusion upon the whole case that the judgment must be affirmed with costs.

Lott, J., also read an opinion for affirmance, on the ground that the defendant, Lockwood, was not bound to sell in parcels, and that although, if the plaintiff had himself offered the money and demanded an assignment, he would have been entitled thereto; yet MacGregor was a stranger and was not entitled to receive an assignment of the mortgage.

Hunt and Smith, JJ., were for reversal both on the ground of the right to an assignment of the mortgage and also that stated in the opinion of Sutherland, J.

Grover and Foster, JJ., were also for reversal.

Earl, Ch. J., Lott and Ingalls, JJ., for affirmance.

Judgment reversed and new trial ordered.