■ CHEMICAL BANK, Respondent, v BRUCE G. MELTZER, Appellant, et al., Defendant. [666 NYS2d 624] —Judgments, Supreme Court, New York County (Ira Gammerman, J.), entered June 10, 1996 and August 15, 1996, awarding plaintiff damages of $337,756, plus interest, costs and disbursements, and awarding plaintiff attorneys' fees of $14,592, respectively, and bringing up for review prior orders which granted plaintiff's motion for summary judgment in lieu of complaint, and denied defendant-appellant's cross motion to compel an assignment of the subject bond and mortgage, affirmed, with costs. The appeal from the orders, same court and Justice, entered May 17

and on or about June 3, 1996, are dismissed, without costs, as superseded by the appeals from the judgments.

Defendant-appellant's payment of the outstanding indebtedness on the bond did not entitle him to be subrogated to plaintiff's rights thereunder and the first mortgage securing it. Since the guarantee signed by defendant does not distinguish between any of the three guarantors thereon, and, indeed, states that they are "jointly and severally, absolutely, irrevocably and unconditionally" primary obligors, defendant's contention that plaintiff could only demand payment from him upon a failure to perform by one or both of the other guarantors, and that defendant was therefore their surety, is simply not supported by the document he signed.

We are in agreement with the decision of the motion court and its determination that it would not be equitable to permit defendant to be subrogated to plaintiff's rights under the subject bond and first mortgage (*see, King v Pelkofski*, 20 NY2d 326, 333), since plaintiff, who also holds a second mortgage on the property, would have to pay defendant the amount necessary to redeem an assigned first mortgage were defendant to foreclose on it, in order to protect its second mortgage, which would effectively nullify the guarantee defendant gave to plaintiff. "The obligation assumed by a surety runs to the creditor and subrogation may not in any way defeat the creditor's rights." (*Winkelmann v Excelsior Ins. Co.*, 85 NY2d 577, 582.) We have considered defendant's remaining arguments and find them to be without merit. Concur—Sullivan, Milonas and Mazzarelli, JJ.

Murphy, P. J., dissents in a memorandum as follows: In 1984 plaintiff bank's predecessor in interest purchased a bond issued by the Town of Brookhaven Industrial Development Agency in the face amount of $1.1 million. As security for payment of the debt evidenced by the bond, the purchaser bank was given a mortgage upon the real property whose development was to be financed with the funds from the bond sale. Additionally, guaranties of the bond's payment were given the bank, respectively, by defendant Major Building Products Wholesalers, Inc. (hereinafter Major), the lessee of the facility to be constructed by the Industrial Development Agency, and by defendant-appellant Bruce G. Meltzer, one of Major's principals.

In 1991, the same bank again extended credit to Major via the Brookhaven Industrial Development Agency, and was given by the Agency as security for the loan's repayment a second mortgage upon the real property leased to Major. Meltzer was not a party to this second transaction.

In 1993, Major defaulted in its lease payments, and as those payments had been earmarked to service the debt represented by the 1984 bond, the bond went into default as well. Thereupon, the bank demanded payment of the outstanding obligation represented by the 1984 bond from Meltzer pursuant to his guaranty. Meltzer acknowledged and agreed to satisfy the obligation remaining under the 1984 bond, but requested as a condition of so doing that he be subrogated to the bank's rights as a creditor under the 1984 bond purchase agreement; he asked, accordingly, that the mortgage given as security for the 1984 loan be assigned to him. The bank, unwilling to assign Meltzer its first mortgage upon the collateral securing both of its loans to the Industrial Development Agency, elected instead to sue Meltzer upon his guaranty.

This appeal follows the motion court's grant of plaintiff bank's motion for judgment in lieu of a complaint against Meltzer based upon his personal guaranty. In granting the motion, Supreme Court, while acknowledging the longstanding common-law rule that a surety upon performing as such is entitled to be subrogated to the rights of the creditor to recover from the party primarily liable for repayment of the debt (*see*, *Ellsworth v Lockwood*, 42 NY 89, 98), expressed the view that Meltzer's role in the context of the 1984 financing transaction was not that of a surety but of a guarantor and that in the latter capacity his obligation was collateral and not primary and as such was not an appropriate predicate for the acquisition of subrogatory rights. The court also indicated its belief that compelling an assignment of the first mortgage to Meltzer would be inequitable since it would, in the event of Meltzer's foreclosure upon the first mortgage or the bank's foreclosure upon the second mortgage, effectively require the bank to repay Meltzer any amounts paid by him pursuant to his guaranty.

Because I believe that Meltzer was in fact cast as a surety in the 1984 financing transaction, and because I am unable to perceive any reason to deny him the subrogatory rights equity ordinarily affords one acting as a surety, I respectfully dissent from the majority's decision to affirm the appealed rulings.

To begin, I do not think that there is any cogent distinction to be drawn by describing defendant Meltzer in the context of the 1984 loan as a guarantor rather than a surety. A guarantor is generally merely a kind of surety (*see*, *Fehr Bros. v Scheinman*, 121 AD2d 13; *Anti-Hydro Co. v Castiglia*, 92 AD2d 741, 742; Restatement [Third] of Suretyship § 1, comment *c*). Indeed, not even plaintiff bank has sought to rely upon this tenuous distinction. To the contrary, in arguing that Meltzer is not a surety

the bank has not followed the motion court's lead in maintaining that his obligation was collateral but rather has contended that his obligation was primary and that as a primary obligor Meltzer was not entitled to become subrogated to the bank's rights as a creditor. However, while it may be true that vis-à-vis the bank, Meltzer was a primary obligor, it would appear equally true that vis-à-vis the co-obligor Major, his role was that of a surety (*see, Fisher v Mahland*, 191 App Div 209, 211 ["(T)hough defendant took on himself the place of a co-obliger, still he may be a surety"]; *see also*, Restatement [Third] of Suretyship § 1 [3]). It is clear that Major, and not Meltzer individually, was the true beneficiary of the 1984 financing transaction and that Major was primarily responsible for furnishing the sums necessary to service the debt incurred by reason of the 1984 bond purchase. Only if Major defaulted upon that primary obligation was the bank to have recourse to the guaranty given by Meltzer. In that event, Meltzer would in essence be asked to answer for a debt owed principally by another, or, in other words, to act as a surety. That is, in fact, precisely what has occurred and having been asked to assume the obligation of a surety, Meltzer ought also to have been assured that his consequent rights as a subrogee of the creditor receiving the benefit of his guaranty would be fully honored.

Nor do I think there is any merit to the bank's claim that because it subsequently, in 1991, took a subordinate mortgage upon the collateral already securing the 1984 loan, Meltzer should be denied the recourse ordinarily accorded a surety. As noted, Meltzer's role in the 1984 financing transaction was clearly that of a surety and it would seem plain that he could not be stripped of his rights as a surety by a subsequent financing agreement to which he was not a party. What is more, there would seem to be no inequity involved in relegating the bank to precisely the security for which it bargained. The mere fact that the collateral may not be of sufficient value to repay the debt owed the bank does not argue with any measure of cogency for the impairment of the surety's right of recourse against that collateral. In very similar circumstances it has been aptly observed: "It is true that in this case the mortgagee also held a second mortgage on the premises which was given to it by a subsequent grantee and it desired to protect this second mortgage. This situation created no equities in the plaintiff's favor. The original mortgagor was not a party to the transaction of the giving of the second mortgage and can in no way be bound by, or deprived of any of its rights by reason of, that transaction. It must be assumed that the mortgagee was not in ignorance of the first mortgagor's right of subrogation

when it entered into the second transaction, and if, under those circumstances, it saw fit to place itself in this position, it must abide by the effect thereof" (*National Sav. Bank v Fermac Corp.*, 241 App Div 204, 206, *affd* 266 NY 443).

Finally, the bank's claim that it could not assign the 1984 mortgage but instead, upon payment of defendant's guaranty, was obliged pursuant to section 275 of the Real Property Law to issue a satisfaction of the mortgage, is also without merit. Real Property Law § 275, particularly as amended in 1990, provides no support for this contention. Indeed, the statute makes it quite clear that "the full amount of principal and interest due on a mortgage shall not be considered to be paid whenever such mortgage continues to secure a bona fide debt and an enforceable lien continues to exist" (Real Property Law § 275 [2]). It follows that, here the mortgage may not be deemed paid since it continues to secure a *bona fide* debt, namely, the debt owed by the principal obliger, Major, to the surety, Meltzer, and an enforceable lien continues to exist.

Accordingly, the judgments of the Supreme Court, New York County (Ira Gammerman, J.), entered on June 10, 1996 and August 15, 1996, which, respectively, awarded plaintiff the sum of $337,756, plus interest, costs and disbursements, and the sum of $14,592 in counsel fees, and the orders of the same court and Justice entered on May 17, 1996 and May 20, 1996, which granted plaintiff's motion for summary judgment in lieu of complaint and denied defendant Meltzer's cross-motion to compel an assignment of the subject bond and mortgage upon payment of his obligation pursuant to the guaranty, should be reversed, the aforesaid judgments vacated, the cross-motion granted and judgment entered in defendant-appellant's favor declaring that upon defendant Meltzer's payment of all amounts necessary to satisfy the debt represented by the 1984 bond, he is entitled to become subrogated to the rights of the bank respecting that debt, among them the right to proceed against the collateral securing payment of the debt and, in that connection, to have the first mortgage upon that collateral assigned to him.