Carr *v.* Carr.

---

CEYLON W. CARR, Appellant, *v.* ELIZABETH CARR, Respondent.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1871.)

Where the plaintiff took a deed from the owner of premises, under parol agreement with one C. that a purchase should be made, and a part of the purchase-money advanced by him for the benefit of C. who paid the balance; that the plaintiff should hold the title as security for repayment to him of the sum advanced for purchase-money, taxes, &c., and on repayment of such advances the premises should be conveyed to C. or his wife, — *Held* (TALCOTT, J., dissenting), that the plaintiff was a mere mortgagee of the land, and could not maintain ejectment for it against the defendant, C.'s widow.

It seems, if the relationship between the parties to the agreement was that of trustee and *cestui que trust*, ejectment did not lie against the defendant, who was not shown to be in default. (TALCOTT, J., dissented.)

Carr *v.* Carr.

Though, in an action of ejectment, the jury may only be required to answer specific questions of fact where they render a general verdict (Code, § 261), yet by consent they may find upon particular questions of fact, without finding such verdict, and in such case their finding is in the nature of a special verdict.

APPEAL by the plaintiff from a judgment rendered for the defendant at the Steuben Circuit. The action was ejectment. The facts are stated in the opinion of MULLIN, J.

*George B. Bradley,* for the appellant. Assuming that the money for conveyance was advanced by the plaintiff for Daniel D. Carr, and that the transaction was, in effect, a payment of the purchase-money by the latter, then title under the deed vested absolutely in the plaintiff.

1. Inasmuch as the deed was made in the name of the plaintiff, with the understanding and consent of Daniel D. Carr, it would fall within the statute, which provides, that, "where a grant shall be to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as alienee in such conveyance." (R. S., part 2, chap. 1, title 2, § 51; *Garfield* v. *Hatmaker*, 15 N. Y., 475; *McCartney* v. *Bostwick*, 32 id., 53–59.) Before this statute, the common-law permitted a trust to result in such case to the party paying the consideration, but the grantee took the legal title. (*Moore* v. *Spellman*, 5 Denio, 225; *Jackson* v. *Van Slyck*, 8 Johns., 487.) And that failed to produce a mortgage.

2. It follows, that the plaintiff's exceptions to refusals to charge as requested, and to submission of the first question to the jury, were well taken.

The deed cannot be construed to be a mortgage.

1. To constitute a mortgage, it is necessary to have both a mortgagor and mortgagee. The legal title passed by the deed to the plaintiff. Berry, therefore, is not a mortgagor. Daniel D. Carr had no title or interest in the property. He transferred none to the plaintiff, and, therefore, could not be

a mortgagor. All the right he had rested in the oral arrange-
ment with the plaintiff. It cannot be pretended that the deed
made by Berry to the plaintiff vested the title in Daniel D.
Carr; but that it gave the legal title to the plaintiff, cannot
be doubted. And this is all that is requisite to support the
position of the plaintiff in this case. No principle can be
invoked or authority found to support the idea that a deed
thus taken can be a mortgage.

2. There is no doubt but that a deed, absolute on its face,
may in fact be a mortgage when made by a party who may
be deemed a mortgagor to secure the payment of a sum of
money, or when a party, holding an equitable title or interest,
assigns or surrenders that for a like purpose. The conversion
of it into the form of a legal title does not defeat its purpose,
but the character of the assignment or surrender follows and
gives to the deed the nature of a mortgage. The assignment
in such a case would, in legal effect, make the assignor or
debtor a party to the instrument in any form, upon the prin-
ciple, "once a mortgage, always a mortgage." (*Murray* v.
*Walker*, 31 N. Y., 399, 403; *Clark* v. *Henry*, 2 Cow., 324.)
But in this case the deed was not the product of any title or
interest of Daniel D. Carr, and he cannot, in theory or by any
sort of fiction, take the legal title by virtue of the deed to the
plaintiff. Yet the legal title did pass by that deed, and the
plaintiff has not parted with it. Whatever right Daniel D.
Carr had, rested in oral contract with the plaintiff, and
depended upon performance.

3. The defendant calls upon the authority of *McBurney* v.
*Wellman* (42 Barb., 390), for support. That case, as reported
in the Supreme Court, does not seem to have any application.
In that case, Wellman, the defendant, having the equitable
title and the possession, with the right to it, surrendered his
contract, and procured conveyance to be made to McBurney,
under an oral agreement that the latter should make to him
a written contract of sale, which McBurney refused to do.
The court, at General Term, held that the oral agreement
was not within the statute of frauds, and that McBurney was

Carr v. Carr.

in default in not making the contract pursuant to his agreement. Judge SMITH, in his opinion in that case, expressed the view that, inasmuch as Hunting, before the conveyance to McBurney, held the title in trust for Wellman, his deed, aided by the surrender of the contract, operated as a transfer to McBurney of the equitable interest of Wellman, with the same effect as if the latter had assigned the contract, and the deed had been procured to McBurney by virtue of the assignment of contract as security, and, therefore, the deed might be treated as a mortgage. It is quite difficult to see how the deed in that case could be deemed a mortgage. And the Court of Appeals, when that case was determined there, were unwilling to hold that the deed could be deemed a mortgage, but rather repudiated that doctrine, and held that the oral arrangement between McBurney and Wellman was so far performed by the latter as to relieve it from the statute of frauds, and that it would be a fraud upon him to permit the former to refuse performance on his part. (See MS. opinion, Court of Appeals, WOODRUFF, J.)

The right of Daniel D. Carr, and those succeeding to his right, rests wholly in the oral arrangement, and is dependent on its performance.

1. That arrangement was to convey on payment, which the plaintiff has at all times been in readiness to do.

2. But, instead of payment, or offer to pay, the defendant presents the default of her husband and those claiming under him, and asks the court to support her possession notwithstanding.

3. The plaintiff has the title, and his remedy is no less than that of a vendor of an executory contract of sale of real property, on default made by vendee in payment of the purchase-money. The remedy in such case is by ejectment. (*Powers* v. *Ingraham*, 3 Barb., 576.)

4. And that is so, because the vendor has the legal title, although in equity he has the *quasi* relation of mortgagee, the vendee having the equitable title.

5. But the equitable title never can aid a vendee in default, as against the legal title to retain possession. It is only by means of the court of equity that the legal relation of the parties, in some cases, may be developed and established. Their legal rights, when ascertained, control.

6. Assuming that the oral agreement, aided by part performance, afforded an equitable title to Daniel D. Carr, no right to the possession, as against the legal title, remains while default continues; but the only remedy of defendant is found in performance by payment or tender of payment. The failure to do this entitled the plaintiff to recover the possession in this action.

*Spencer, Thompson & Mills*, for the respondent. The jury, by their special verdict, have found in substance and legal effect, that the conveyance by which plaintiff holds the legal title to the premises in question, was taken by him as security for the payment of money advanced by him to or for the account of defendant, and under an agreement to convey the premises to her upon repayment of the money so advanced.

This is equivalent to finding that the transaction was such as to constitute the conveyance a mortgage.

It appears in substance that defendant's husband, Daniel D. Carr, negotiated the purchase of the property, but not having sufficient money to pay the whole purchase price, applied first to his brother, Asaph F. Carr, and next to plaintiff, who agreed to the proposed arrangement, which was, that plaintiff should advance sufficient of the purchase-money, with what Daniel D. Carr could furnish, to complete the purchase, take the title in his own name, and that when the advances made by him should be repaid, he should then convey the property to defendant; no definite time being fixed for such repayment.

This was no more nor less than the application, on the part of Daniel D. Carr, for a loan of money on the security of the legal title to be conveyed to the lender.

The verdict of the jury entirely negatives the idea that the property was purchased by plaintiff, or that there was an independent resale, or agreement for resale by him, to defendant.

The case therefore stands upon this well-settled legal proposition: "Every conveyance of land, which is, in fact, a security, either for an antecedent debt, or for advances made at the time, is in contemplation of equity, a mortgage, and entitles the debtor to a reconveyance of the estate on payment of the debt. This right is one of pure equity, not only independent of the agreement of the parties, but paramount to it, and may be enforced without regard to the form of the conveyance, and even in opposition to its terms." (2 Leading Cases in Equity, Pt. 2, p. 432, American Notes; see these notes at length. *Morris* v. *Nixon*, 1 How. U. S., 118; *Tibbs* v. *Morris*, 44 Barb., 138, 146; *Vandusen* v. *Worrel*, 3 Keyes, 311; *Hodges* v. *Tenn. Ins. Co.*, 4 Selden, 416; *Sturtevant* v. *Sturtevant*, 20 N. Y., 39.)

Defendant went into, and has ever since continued to hold possession. (1 Powell on Mortgages, 284.)

It must be assumed that the jury found the evidence of Asaph F. Carr, true. From that it appears that the purchase was negotiated by Daniel D. Carr, and was really made by him. This is a strong, if not conclusive circumstance, to show that the conveyance was a mortgage. (*Conway's Ex'r.* v. *Alexander*, 7 Cranch., 241; *Vernon* v. *Buttee*, 2 id., 110; *Oldham* v. *Halley*, 2 J. J. Marsh, 114).

So also it is a cogent circumstance showing the conveyance a mortgage, that Daniel D. Carr himself furnished a part of the purchase-money. This fact is entirely inconsistent with the idea of a purchase by plaintiff.

The evidence tends strongly to show that there was an express promise, on the part of Daniel D. Carr, to pay the money to plaintiff. At all events the money was advanced at his request, and he was under an implied obligation to repay it. But whether so or not, he had the right to pay it as his debt; and this, in equity, placed him in the position of

mortgagor. It is enough that there is a debt which the party incurring it, is entitled to repay. (2 Leading Cases, Pt. 2, p. 435; *Flagg* v. *Munn*, 2 Sumner, 486.)

Nor is it any objection to treating this conveyance as a mortgage, that the grantor in the deed was a stranger to the arrangement. The same objection was raised in *McBurney* v. *Wellman* (42 Barb., 390), and was overruled by the decision in that case. This decision meets this precise question.

This decision was affirmed by the Court of Appeals as well on this ground as on the further ground discussed more at length, that the defendant was lawfully in possession of the premises, and had done nothing to forfeit his right to such possession. This last ground was taken in answer to the argument of plaintiff's counsel, urged pertinaciously in the Court of Appeals, that the plaintiff had the legal title which drew to it the right of possession.

It being established by the verdict of the jury that the conveyance under which plaintiff holds title, is a mortgage, this is a bar to an action of ejectment, and judgment was properly given for defendant upon the verdict. (2 R. S., 312, § 57.) And this is equally so, whether the defeasance is by parol, or contained in the mortgage or other written instrument. (*Jackson* v. *Myers*, 11 Wen., 535; *Swart* v. *Service*, 21 Wen., 36; *Stewart* v. *Hutchins*, 13 Wen., 485; *Webb* v. *Rice*, 1 Hill, 606.)

See dissenting opinion of BRONSON, justice, which was sustained in the Court of Errors. (6 Hill, 219, 220; *Sahler* v. *Signer*, 37 Bar., 329.)

The jury having found that there was no agreement of plaintiff to sell the property to Daniel D. Carr, no default of payment of purchase-money advanced by plaintiff can entitle him to maintain this action.

The plaintiff having obtained the legal title through an agreement, by which the same was to inure to the benefit of defendant, now fraudulently repudiates the agreement, and seeks by this action to deprive her of that benefit. By resting on his legal title alone, he waives the right to insist on the

non-performance of the agreement which he repudiates, as a ground of recovery. (*Sieman* v. *Austin*, 33 Barb., 9; affirmed, 29 N. Y., 598; *Ryan* v. *Dox*, 34 N. Y., 307; reversing, 25 Bar., 440; *Freeman* v. *Freeman*, 51 Bar., 306.)

The case of *Ryan* v. *Dox*, is not unlike the present; there, as here, the party insisting on the legal title was applied to, to purchase the property in question, advance the purchase money, and take the legal title as security for the same, with a parol agreement by such party, to convey to the person for whose benefit the purchase was made, on repayment of such purchase-money. The decision of the Supreme Court, holding the statute of frauds a bar to the action, was reversed. The Court of Appeals (34 N. Y., 314, 315), in deciding the case, cites with approbation, *Brown* v. *Lynch* (1 Paige, 147), where Chancellor WALWORTH held that the party having the legal title, obtained under similar circumstances, had no other interest in the property than that of a mortgagee, to secure the payment of the purchase-money. (*Boyd* v. *McLean*, 1 Johns Chy., 582; *Despard* v. *Walbridge*, 15 N. Y., 374.)

This is not a case of payment of consideration by one person and conveyance to another, so as to vest an absolute title in the latter, by virtue of the fifty-first section of the statutes of trusts. (1 R. S., 728.)

This point was insisted on, and overruled in *McBurney* v. *Wellman*. (See point first of plaintiff's argument, 42 Bar., 397.)

There is no such difference between the facts of that case and this, as to take the latter out of the operation of the principle then settled in this respect. Where a person takes a conveyance of land as security for the repayment of money loaned, this can, under no circumstances, be regarded as a grant made to one person upon a consideration paid by another within the statute referred to. The transaction cannot be brought within the fifty-first section of the statute of trusts, without entirely disregarding the verdict of the jury. If plaintiff took and holds the legal title as security, he cannot, hold it, absolutely, under the section of the statute referred

to. The conveyance having been made to plaintiff as security for money advanced, no other character can be given to the transaction. No resulting trust could have been presumed, or have arisen at common-law. This trust being presumed, any circumstances or declarations which evince a different intention of the parties, will tend to rebut the presumption. (Tiffany & Bullard, Law of Trusts, 29.) And the rule that a trust arises for the benefit of him who pays the purchase money, is a mere presumption in the absence of other proof. (Id., 31.) The presumption arising from payment of the purchase-money, is rebutted by proof and by the verdict; and as according to this proof and the verdict, there could be no resulting trust by the common-law; the statute can have no application.

If plaintiff is entitled to hold the legal title as security for his advances, then he is, to that extent, a mortgagee. (*Brown* v. *Lynch*, 1 Paige, 147, 158.) But if not, he has been guilty of a fraud in obtaining the legal title under an agreement for that purpose, without intending to perform it, and is, therefore, converted into a trustee for the party injured by the fraud. (Id.) If the agreement had been that the conveyance should be made to defendant, and by her to plaintiff, as security for the advances, it would not be contended that the conveyance was any other than a mortgage. The same result is accomplished by conveyance directly to plaintiff. It is sufficient to constitute the conveyance a mortgage; that there was a loan or advance of money; that the legal title was taken as security for its payment; that there is a party bound for its payment, or, if not, having the right to make it, and consequently the right of redemption. This party is the mortgagor.

Plaintiff's counsel, having consented to the mode adopted of submitting specific questions to the jury, waived his exceptions previously taken to the refusal of the court to charge as requested, and all other questions, except the sufficiency of the evidence to authorize the submission of the first question to the jury, and the materiality of both questions

Carr v. Carr.

submitted. Not having requested the submission of any other question, he cannot now be heard to insist that there was any other which ought to have been submitted. (*Moss* v. *Priest*, 19 Abb., 314; *Harris* v. *Northern Indiana R. R. Co.*, 20 N. Y., 232, 239; *Hotchkins* v. *Hodge*, 38 Bar., 117, 123; *Dows* v. *Rush*, 28 Bar., 157, 180; *Partridge* v. *Gilbert*, 15 N. Y., 601, 609, 616, 617.)

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J. This action is brought to recover the possession of a lot of land in the village of Corning, in the county of Steuben, the possession of which, it is claimed, is unlawfully withheld from the plaintiff by the defendant.

The defences are, first, a general denial; and, second, that the defendant's husband, at some time prior to the 25th February, 1858, applied to the plaintiff to advance for him, to one Berry so much money as would be necessary to pay Berry for said lot of land, after applying certain county orders for the payment of money that the defendant's husband then held and owned, and to take a conveyance of said premises from said Berry, and hold the title as security for the money he should so advance, and give time to defendant's husband to pay for the same, and, upon being paid the sum so advanced, with interest, to convey to defendant's husband or herself the title to said land. The plaintiff, in pursuance of said parol agreement, advanced the money to Berry, and took the title. Defendant and her husband went into possession, and he remained in possession until his death, and the defendant has remained in the possession ever since.

It is insisted by the defence that the plaintiff is merely a mortgagee, and, as such, cannot recover in ejectment.

The plaintiff insists that he is owner in fee; that the defendant is a purchaser in possession under a parol contract, which she has neglected to perform, and that the plaintiff is entitled to a judgment; and the remedy of the defendant, if any, is to tender the balance of the purchase-money unpaid, and apply in equity for a specific performance of the parol contract.

On the trial, the defendant gave evidence tending to prove the agreement, as set out in the answer; the advance by the plaintiff of the purchase-money to Berry; the taking of a conveyance by plaintiff; the advance of a part of the purchase-money by defendant's husband, and the subsequent payment to plaintiff of further sums to apply in payment of the sums advanced by plaintiff; the possession of the premises by defendant and her husband, and the demand by the plaintiff of possession.

The plaintiff gave evidence tending to prove that the transaction between him and defendant's husband was a sale by parol of the premises, to be conveyed to him or the defendant when fully paid for; and that a part only of the purchase-money had been paid.

The plaintiff's counsel asked the court to charge the jury that, if the amount advanced to Berry for the purchase-money has not been repaid to him, and if defendant's husband made default in payment thereof, the plaintiff is entitled to a verdict. The court refused so to charge, and plaintiff's counsel excepted.

The same counsel requested the court to charge that plaintiff was entitled to a verdict. The court refused so to charge. Defendant's counsel excepted.

The court then proposed to counsel to consent that the jury be instructed to find upon particular questions of fact, to be stated in writing; and that after verdict on such questions, the cause be decided by the court. The counsel assented to this proposition, reserving the right to except to the submission of any particular question that should be deemed immaterial, or, otherwise, improper.

The court, thereupon, submitted to the jury two questions:

1st. Was the deed of the premises in question taken by the plaintiff under a parol arrangement with Daniel D. Carr, that the purchase should be made, and the purchase-money, or some portion of it, should be advanced by the plaintiff for the benefit of Daniel D.; that the plaintiff should hold the title as security for the repayment to him of the sum advanced for purchase-money, taxes, and insurance; that on repayment

of such advances the premises should be conveyed to said Daniel or his wife ?

2d. Was the deed taken by plaintiff on a parol arrangement with D. D. Carr, that plaintiff should sell and convey said property to him on payment of the price paid by plaintiff, and taxes and insurance?

The first question was answered in the affirmative. The second in the negative.

Upon these findings, the court ordered judgment for the defendant.

By section 261 of the Code, the jury can only be required to answer specific questions of fact when they render a general verdict. As a general verdict was not rendered in this case, the jury could not regularly be called on to answer the questions submitted to them.

The jury was at liberty to find either a general or special verdict. They have done neither; and were it not for the consent of counsel to the mode adopted of arriving at a verdict, we should be compelled to send the case back, on the ground that the trial had was a mistrial.

We can only give effect to the agreement entered into by counsel, by holding the question submitted to the jury, and its finding thereon a special verdict, and thus treating it; we can only inquire whether, upon the facts, the judgment appealed from, is right. We cannot go behind the special verdict to ascertain whether the findings are justified by the evidence, nor whether any errors were committed in the admission, or rejection of evidence. (Graham's Practice, 2d ed., 318.)

Transforming the first question and answer into a special verdict, the finding would be that the plaintiff took the deed of the premises under a parol arrangement with D. D. Carr; that the purchase should be made, and the purchase-money, or some part of it, should be advanced by plaintiff for the benefit of said D. D. Carr; and that plaintiff should hold the title as security for the repayment to him of the sum advanced for purchase money, taxes, and insurance; and that

on repayment of such advances, the premises should be conveyed to said D. D. Carr, or his wife. In addition to this, we have it found that the deed was not taken by plaintiff on a parol arrangement with D. D. Carr, that plaintiff should sell and convey said property to him on payment of the price paid by plaintiff, and taxes and insurance.

On these facts, it cannot require either argument or authority to show that the defendant was entitled to judgment.

The plaintiff is found to be a mere mortgagee; and as such he cannot maintain ejectment.

In order to create the relation of mortgagor and mortgagee, it is not necessary that there should be an instrument, in writing, under seal, or that the title should be conveyed by the person claiming the rights of mortgagor. In the following cases the person held to be a mortgagee, obtained the title from a third person, under an agreement with the person claiming, and held to be mortgagor, to purchase the same, and hold the title as security for the money advanced to acquire the title. (*Brown* v. *Lynch*, 1 Paige, 147; *McBurney* v. *Wellman*, 42 Barb., 390; *Same* v. *Same*, affirmed in the Court of Appeals; *Brown* v. *Jones*, 46 Barb., 400; *Ryan* v. *Dox*, 34 N. Y., 307.)

It is not material what name is given to the relation created by the agreement between the parties; whether that of mortgagor and mortgagee, or of trustee and *cestui que trust*, the result is the same in either case. The party holding the title cannot turn the one for whose benefit he holds, out of possession in an action at law.

If we could look at the evidence, it would be seen that the plaintiff received of defendant's husband some $300, at or about the time of the purchase, to be invested in the premises in question; and with this money in his hands, he cannot, under the agreement, be permitted to repudiate it and pocket the money.

A court of equity will hold him to be a trustee, and, as such, bound to convey to the defendant on being reimbursed what he has advanced. (*Swinburn* v. *Swinburn*, 28 N. Y.,

568 ; *Siemon* v. *Schurck,* 29 N. Y., 598 ; *Lounsbury* v. *Purdy,* 18 N. Y., 518.)

Opinion of WOODRUFF, J., in *McBurney* v. *Wellman,* in the Court of Appeals.

In the same opinion it is held that the plaintiff cannot maintain ejectment against the defendant, whether the relation of the parties is that of mortgagor and mortgagee, or trustee and *cestui que trust.*

No time is fixed for the payment of the plaintiff's advances ; and so long as the defendant is not shown to be in default, she cannot be turned out of possession.

The exceptions taken to the submission of the questions to the jury, cannot be sustained. They presented the very questions in issue between the parties, and cannot be said, therefore, to be immaterial.

The agreement that the questions should be submitted to the jury, is wholly inconsistent with a right in either party to object to the submission. To permit it would make it necessary to order a new trial, because of the improper submission.

The judgment must be affirmed.

TALCOTT, J. (dissenting.)   This is an action of ejectment, in which the only verdict rendered is an affirmative answer to a single question, which the jury were directed by the court to answer.

It was conceded that, on the 25th day of February, 1858, the title to the premises in question was in one Charles Berry, who, on that day, conveyed the same to the plaintiff, by an absolute deed in fee, with warranty. The special verdict, putting the interrogatory into the form of an affirmation, is, that " the deed in question was taken by the plaintiff under a parol arrangement with Daniel D. Carr that the purchase should be made, and the purchase-money, or some portion of it, should be advanced, by the plaintiff, for the benefit of Daniel D. Carr ; that the plaintiff should hold the title as security for the repayment to him of the sum advanced for the purchase-money, taxes and insurance ; that, on repayment of such

advance, the premises should be conveyed to Daniel D. Carr or his wife."

Of course, this constitutes no defence at law, because it is not permitted at law to vary the effect of the deed by parol evidence, or to establish a title to real estate by proof of a parol contract.

It is claimed to be an equitable defence, and, as such, admissible, under the Code, as a defence to the legal cause of action. It is claimed that the facts set forth in the special verdict show the conveyance to the plaintiff to be a mortgage, and his estate and title to be that of a mere mortgagee. And, if this be so, then it is true that the plaintiff cannot maintain an action of ejectment to recover the premises. In this State, a mortgagee is no longer regarded as holding the legal title for the purposes of an ejectment. Proof of an outstanding forfeited mortgage will not defeat the recovery of a plaintiff in ejectment; and, by the express provisions of the statute, a mortgagee can no longer maintain ejectment upon his title as such. (2 R. S., 312, § 57.) But, I think, the conveyance to the plaintiff is not strictly a mortgage, within the meaning of the statute. It is true, as claimed by the defendant's counsel, that every conveyance of land, intended merely as a security for the repayment of money, though absolute in form, is, in equity, to be treated as a mortgage. And had Daniel D. Carr owned this land, and then made the deed to the plaintiff, with a parol agreement that the title was to be held as security merely, the conveyance would undoubtedly be considered, in equity, as a mere mortgage.

I think that rule, however, must be confined to the cases where such is the intention of the parties to the conveyance.

In such cases, the intention of the parties being to convey the title merely as security, the equity of redemption, which, in this State, is the legal title, remains in the grantor, and he, on the satisfaction of the debt, is entitled to a reconveyance. In this case, the deed from Berry was intended by him, not as a security, but as a conveyance to the grantee of the abso-

Carr v. Carr.

lute legal title, free from all redemption or reclamation by him. And the deed must have operated to convey such a title to somebody. To whom, then, did it convey the absolute legal title, and in whom is the legal title now vested? Certainly, as I think, in the plaintiff.

I presume it would not be contended that it could operate to convey the legal title to Daniel D. Carr. Suppose some third party were in possession of the premises, in hostility to both the plaintiff and to the heirs-at-law of Daniel D. Carr; who could maintain an action of ejectment to recover the possession? If the plaintiff is a mere mortgagee, certainly he could not maintain such action; and it was accordingly held, in the Supreme Court, while the doctrine prevailed there, that an absolute deed could, at law, be turned into a mortgage by parol evidence, that a third party, in possession, but not in any way connecting himself with the title of the party executing the conveyance, might defeat an action of ejectment by showing, by parol evidence, that the absolute deed, under which the plaintiff claimed, was in fact given as a security, and thus convert it into a mortgage, and defeat the recovery by virtue of the statute alluded to. (*Swart* v. *Service*, 21 Wend., 36.) I presume it will not be claimed that Daniel D. Carr could have sustained an action of ejectment against a third party in possession, upon the title disclosed by the special verdict. It cannot be correct, then, to say, that the title of the plaintiff is merely that of a mortgagee. The law does not tolerate a suspension of the legal title. It must always be vested in somebody. In my opinion, in this case it was, by the conveyance of Berry, vested in the plaintiff, and has ever since so remained, and the statute referred to is not, of itself, an obstacle to his recovery in ejectment.

This view of the case, however, does not deprive the party, beneficially interested in such a transaction as is described in the special verdict, of all remedy. Nor is it at all necessary to call the conveyance to the plaintiff a mortgage, in order to secure the plaintiff, for whose benefit the conveyance was taken, all his equitable rights.

The title of the plaintiff, in some such cases, has, as I think, been loosely characterized as that of mortgagee, without any design of holding that the conveyance was strictly a mortgage, or the estate of the grantee strictly the estate of a mortgagee. The case of *McBurney* v. *Wellman* (42 Barb., 390) is much relied on by the counsel for the defendant, because, in the opinion in that case, the rights of the holder of the title were said to be those of a mere mortgagee. But this statement was in no wise essential to the principles enforced in that case. The same judge who delivered the opinion in that case, I think, was more accurate when, in a subsequent case, speaking of such a title, he said " he must be regarded in equity as a mere trustee of the title for the benefit of Morris Brown, with the rights of a mortgagee." (*Brown* v. *Jones*, 40 Barb., 400.)

The case of *McBurney* v. *Wellman*, it is stated, has been affirmed in the Court of Appeals. The case is not reported, and I have not seen the opinion delivered in the Court of Appeals; but it is stated by the counsel for the plaintiff here, who was also of counsel in that case, that the opinion in that court rather repudiates the doctrine that the deed there was a mortgage, but affirmed the judgment, upon the ground that the parol agreement between McBurney and Wellman had been so far performed by the latter that it was taken out of the statute of frauds, and was to be enforced. This is perfectly intelligible and consistent. In fact, as I understand the case of *McBurney* v. *Wellman*, Wellman had fully performed the contract on his part, and was, in equity, entitled to call for a conveyance of the legal title. In cases where the title of the owner of the land is about to be cut off by a foreclosure or other judicial sale, and an arrangement is made by which a party agrees to take the formal legal title at the sale, and give further time for redemption, like the case of *Ryan* v. *Dox* (34 N. Y., 307), and such cases, though not then necessary to the relief, yet the title of the party taking the conveyance may well be characterized as that of a mortgagee, the same as though the owner himself had executed an absolute deed by way of security, since the conveyance on the judicial sale

Carr *v.* Carr.

is by virtue of a power from the mortgagor or judgment debtor. The party who takes the title in form absolute, takes it subject to the agreement. The equity of redemption is not, therefore, cut off, and the legal title still remains in the former owner; the transaction, taken altogether, operating merely as an extension of the time of redemption.

How, then, stands this case? The defendant, as I have before stated, may set up, in defence of this action of ejectment, her rights in respect to the subject-matter of the action, whether those rights have heretofore been of legal or equitable cognizance. The contract found by the special verdict, being by parol, is void at law, by reason of the statute of frauds. What, then, is the equitable right, to be made available in this action? Simply to have the contract stand, unaffected by the statute of frauds; to have it regarded as of the same force and effect as though it were in writing; not to change its terms and conditions, but to carry it into effect, as though the statute of frauds did not exist.

A court of equity would hold the plaintiff a trustee for the benefit of the party beneficially interested, as it holds a vendor to be a trustee of the land for the vendee, and would enforce the trust against him according to its terms, as though the contract were in writing. An equitable defence to a common-law cause of action must surely consist in such a state of facts as that a court of equity, before the Code, would have interfered to restrain the suit at law. If we go beyond this, we are inventing something that is neither a legal nor an equitable defence; and we cannot go beyond this, without involving both legal and equitable rights in great uncertainty and confusion. An equitable defence, therefore, to an action of ejectment, must be founded on such facts as would enable the defendant, in a court of equity, to call for the legal title, or which, according to the rules of a court of equity, would require that the defendant be permitted to retain the possession, as against the plaintiff.

Applying this test in the present case, if we are to be confined to the special verdict, I think we shall find that it does

not contain sufficient facts to enable us to say, that, upon the facts thus found, the defendant has such equitable rights as would have induced a court of equity to restrain a prosecution at law. The deed referred to in the finding, and which is an exhibit in the cause, was made in 1858. This suit would seem to have been commenced in 1868 or 1869. The finding is, that Daniel D. Carr was to refund to the plaintiff his advances toward the purchase-money, and the taxes and insurance ; no time being specified. The payment, therefore, was to be made by the legal effect of the agreement as found, within a reasonable time. There is no verdict by which we are informed that any part of this money has ever been repaid, or offered to be repaid, to the plaintiff, and no circumstances to excuse the delay are found. If we look into the case, we find, to say the least, that the evidence as to any repayment to the plaintiff is conflicting. If there has been this delay in asserting the rights of Daniel D. Carr, under the parol contract set out in the finding, and in performing it, on the part of Daniel D. Carr, without any excuse, would a court of equity grant relief? To say nothing about the statute of limitations, I think not. In other words, if a complaint were filed in a court of equity, alleging the precise facts set out in the finding, neither more nor less, I do not think it would show a title to relief in that court. There may be excuses for the delay; the money may have been wholly paid, but that fact does not appear. The uninterrupted possession in Daniel D. Carr, down to his death, and of the defendant since then, which is to be inferred from the evidence, may have some effect on the equitable rights of the parties. But none of this is found by court or jury. I think, therefore, the facts found by the special verdict do not show an equitable defence to the action.

But it is said, that in consequence of this parol contract, the only remedy of the plaintiff is, by proceedings in equity, in the nature of a foreclosure suit. If the conveyance to the plaintiff is a mortgage, within the meaning of the statute, which forbids an action of ejectment on a mortgage title, the

only remedy is, by foreclosure, I admit.   But if I am correct in the opinion that the title of the plaintiff is not that of a mortgagee, within that statute, then I think it clear that the plaintiff has a remedy at law by action of ejectment.

It is true, that of late years proceedings in equity have frequently been commenced, in the nature, and to some extent, in the form of foreclosure proceedings, to cut off any equitable rights which might be claimed by vendees under executory contracts.

But this is a modern invention, resorted to, I apprehend, as a matter of precaution, where it has been suspected that the vendees would attempt to restrain the suit at law, or otherwise embarrass the remedy.   The old remedy always resorted to in case of executory contracts, where the vendee was in default, was by action of ejectment.   Undoubtedly an action of ejectment at law may be maintained in this case, because there is no defence at law.   The facts found by the special verdict cannot even be shown at law.   If there be any defence, it is what is termed an equitable defence; and as I have endeavored to show, the facts found by the special verdict, *do* not show such a defence.

The case of *McBurney* v. *Wellman* (*supra*), on the other hand, was a case where a court of equity would have restrained the prosecution at law.

There is another view of this case, upon which, I think, the judgment must be reversed.   When a defendant sets up an equitable defence to an action at law, and the judgment is rendered upon the equitable ground, I suppose it must be such a judgment as a court of equity would render upon the same facts, in case the defendant had been plaintiff in equity, seeking relief upon those facts.   Unless this is so, parties who have rights may, by the adoption of the practice adopted in this case, be rendered entirely remediless.   True, in this particular case, it may be said that the plaintiff might himself resort to an action in equity as his remedy; but there are many cases where the defendant is entitled to some relief in equity, and where a court of equity would restrain the prose-

cution at law, and adjudicate between the parties as equity should require; but yet, where the plaintiff has no such option, where he must be able to maintain his action as an action at law, or be entirely remediless, and the defendant would have a judgment and be placed in a position to which he is not entitled, in either a court of law or a court of equity. Now, it is manifest, in this case, that, whether the estate of the plaintiff be that of mortgagee or trustee, the defendant would be entitled to relief in equity only on the condition of taking an account and paying the balance, if any, by some time to be specified by the court, or, in default thereof, to be forever barred; and a conveyance would have been directed, in case of payment. But, to whom the conveyance should be made, the special verdict leaves us uninformed, as the finding is, that it was to be made to Daniel D. Carr or his wife, one or the other. If to Daniel D. Carr, the case shows he died before suit brought, and, in that case, the defendant would be entitled, so far as appears, only to a dower interest.

Moreover, I think there was a mistrial in this case, for which a new trial must be ordered. This is not a special verdict, in the ordinary sense, and does not contain the findings of fact upon which, as I think, any judgment can be entered; much less, the one which has been rendered. It was not a special verdict, rendered by the jury in their discretion, under section 160 of the Code, but was a special verdict upon some of the issues, rendered under the direction of the court, which is also provided for by the same section. This kind of a special verdict must be rendered in connection with a general verdict, so that the record will show the determination of all the facts necessary to the judgment. (See Code, §§ 261, 262.)

For the foregoing reasons, I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment affirmed.