(160 App. Div. 807)

LUGAR v. LUGAR et al.

(Supreme Court, Appellate Division, First Department. February 13, 1914.)

1. Trusts (§§ 17, 18*)—Resulting Trusts—Evidence to Establish Trust.

Where property was conveyed to one person and part of the consideration paid by another, under an oral agreement that the grantee was to hold the property in trust, though no trust resulted by virtue of such void oral agreement, yet where the grantee came into court and gave his express consent recognizing and adopting the agreement, accounted for moneys, and failed to appeal from a decree charging him with the trust, and directing him to convey to the owners on proper tender, the relations of the parties were as firmly established as though they were evidenced by a formal written instrument, and hence a trust did result.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

2. Dower (§ 14*) — Estates and Interests Subject to Dower — Equitable Estate.

A husband furnished part of the purchase money for a conveyance taken in the name of another, under agreement with the grantee that the grantee should take charge of the property, collect the rents, and, after reimbursing himself for all payments made, to convey any interest in the property to which the husband might be entitled at his death to such persons as he might appoint by will. *Held* that, though the agreement did not create an express trust, it did confer upon the husband an enforceable power in trust, which, not being extinguishable by his death, was an estate of inheritance under 3 Rev. Stat. (5th Ed.) pt. 2, c. 2, § 28, and, as such, his widow was entitled to dower therein under 3 Rev. Stat. (5th Ed.) pt. 2, c. 1, tit. 3, § 1.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 45–47, 49–56; Dec. Dig. § 14.*]

3. Dower (§ 15*) — Mortgages (§ 28*) — Estates or Interests Subject to Dower—Mortgaged Property.

Where a husband furnished part of the consideration for a conveyance to another under an agreement that the grantee should reimburse himself for all payments made, and at the death of the husband convey the husband's interest in the property to his appointees by will, the agreement was a mortgage, the intent being only to secure the grantee for his disbursements, and hence, the husband's estate being that of mortgagor, his widow was entitled to dower therein.

[Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 18, 57–60, 132; Dec. Dig. § 15;* Mortgages, Cent. Dig. §§ 44, 56–58, 153; Dec. Dig. § 28.*]

4. Estoppel (§ 65*)—Equitable Estoppel.

Where a party claimed the property in controversy as the heir of a husband, she was estopped to deny the inheritable nature of the estate, and hence that the husband's widow was entitled to dower therein.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 155–158; Dec. Dig. § 65.*]

Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by Helen B. Lugar against Catherine Lugar and others. From a judgment for plaintiff, defendant named appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

E. M. Wight, of New York City, for appellant.

Henry C. Hunter, of New York City, for respondent.

HOTCHKISS, J. In February, 1890, certain premises in this city were conveyed by Gedney to the defendant Livermore. The consideration for such conveyance was paid in part by Henry P. Lugar and in part by the grantee Livermore; the latter paying $3,000. At the time of the conveyance the premises were subject to a first mortgage of $14,000, of which $2,000 has since been paid by Livermore, who has also paid and satisfied a second mortgage for $963.50, which also was a lien on the premises at the time of said conveyance. The conveyance to Livermore was made pursuant to an oral arrangement between him and said Lugar, by which Livermore agreed to take the title in trust, to receive the rents, pay for repairs and necessary improvements, taxes and the interest on the two mortgages, and also to pay or renew the mortgages or any part thereof at such times as might to him seem expedient, "and make such other payments, loans and advances as said Lugar might direct or require," with power to sell, and from the proceeds, together with the rents, "reimburse himself for all moneys disbursed by him," with interest on yearly balances in his favor, and after the death of said Lugar "to distribute the balance of any moneys derived from the said rents, issues and profits and to distribute any interest in the said land and premises to which said Henry P. Lugar may be entitled at his death, in the manner and to the persons to whom" Lugar "might name and appoint in his last will and testament." The premises were never conveyed by Livermore and are still held by him pursuant to said agreement. Henry P. Lugar died September 10, 1895, leaving a will by which he devised his interest in the premises in undivided shares to his widow, his daughter Marion, one of the defendants, and to his son Charles, to whom he gave one-third. Thereafter the widow died and devised her share to Marion. In May, 1893, Charles married the defendant Minnie, who in December, 1889, procured from Charles an absolute divorce by decree of our Supreme Court. The plaintiff is the sole issue of that marriage. In December, 1906, Charles married the appellant Catherine in the state of Connecticut, and in July, 1909, he died intestate.

This action was brought by Helen to determine the interest of herself and, as well, the interest of Minnie, the divorced wife of Charles, and of Catherine, his widow, in the premises; for an accounting by Livermore; and for a decree directing him to convey to Helen and Marion according to their respective interests, after he should have been reimbursed for all moneys due to him. Livermore appeared at the trial, and the court below decreed the amount due him; that he holds the premises in trust pursuant to said agreement; that neither Minnie nor Catherine is entitled to dower in the premises, which, subject to Livermore's right to reimbursement for moneys due, belongs to Helen and Marion; that Livermore "has the right and power to sell"; and that "upon any sale" he divide the proceeds as above. The court has also decreed that, on paying to Livermore his due, the costs, etc., Minnie and Marion were entitled to a conveyance from him for

their respective undivided interests in the premises. Neither Livermore nor Minnie has appealed, and the question is whether the sole appellant, Catherine, is entitled to dower in the premises. Inasmuch as Livermore does not appeal, it must be presumed that he does not dispute the alleged trust, and that he never has disputed it; the latter presumption being strengthened by the fact that the findings of the trial court show that, in the course of his administration, he has ·collected upwards of $33,000 from rents and has paid to the defendant Marion and her deceased mother, Mary, upwards of $7,500, and to the plaintiff and her deceased father, Henry, upwards of $4,500.

[1] Conceding for the argument that the oral agreement was void to the extent that no trust resulted in favor of Henry or his heirs or devisees (3 Rev. Stat. [5th Ed.] c. 1, tit. 2, art. 2, § 51, p. 15), nevertheless I know of no law which prevented Livermore from treating it as valid and accepting and performing its duties, and when he has come into court and has given his express consent to° recognize and adopt the agreement, has accounted for the moneys coming into his hands, and has failed to appeal from the court's decree charging him with a trust, passing his accounts, establishing his equities and the equities of those interested in the land or its net proceeds, and directing him to convey to the owners of the fee, on proper tender made, it seems to me that we have the relations of the parties from the day of the deed to this date as firmly and solemnly established as they could have been had they been expressed by formal instrument executed cotemporaneously with the deed. So expressed, the instrument would have been enforceable. Woerz v. Rademacher, 120 N. Y. 62, 23 N. E. 1113.

[2] In this situation, was the estate of Henry and his devisees a dowable estate? It will be noted that Charles died before the Real Property Law was enacted and while the Revised Statutes were still in effect. Under the Revised Statutes (5th Ed., vol. 3, c. 1, tit. 3, § 1, p. 31)—the present Real Property Law is the same—a widow was entitled to dower in "all the lands whereof her husband was seised of . an estate of inheritance at any time during the marriage." Whether this was merely declaratory of the established common law (House v. Jackson, 50 N. Y. 161, 164), or was an adoption of a controverted principle (Hawley v. James, 5 Paige, 318, 320, 452, 453), is immaterial. In either case, a widow had her "equitable dower in lands in which her husband had an inheritable interest at the time of his death" (Id.). Authority other than the statute is unnecessary to show that estates of inheritance include any equitable interest which is not extinguished by the death of him entitled thereto. 3 Rev. Stat. (5th Ed.) c. 2, § 28, p. 44. Seisin in fact in the husband is unnecessary; seisin in law satisfies the statute. Durando v. Durando, 23 N. Y. 331. "Seisin in law," as defined by Bouvier, is "a right of immediate possession." Had the relations between Henry and Livermore been reduced to writing, the instrument, while insufficient to create an express trust, would have conferred upon Livermore an enforceable power in trust; the legal estate remaining in Henry. Woerz v. Rademacher, supra, 120 N. Y. 67, 68, 23 N. E. 1113. That such an estate was one

of inheritance is apparent, and that it was dowable was decided in Hawley v. James, 5 Paige Ch. 318, 319, 451–457. The cases of Phelps ·v. Phelps, 143 N. Y. 197, 38 N. E. 280, 25 L. R. A. 625, and Nichols v. Park, 78 App. Div. 95, 79 N. Y. Supp. 547, are not in point, for in each, because of the void oral agreement, the husband was held never to have had any estate whatever in the premises.

[3] The same result is reached from another point of view. It is found as a fact that, although Henry paid part of the consideration, the remainder was paid by Livermore, and that one of the purposes of the conveyance was to enable him to reimburse himself "for all moneys disbursed by him," from which it may be inferred that he was authorized to reimburse himself for the part of the consideration he had paid as well as for his subsequent disbursements, thus constituting him a mortgagee, the equitable title remaining in Henry, descending to his heirs, subject to Livermore's lien (Carr v. Carr, 52 N. Y. 251, applying 4 Lans. 314, where the facts are fully stated), and entitling Henry's widow to dower (Bowery Nat. Bank v. Duncan, 12 Hun, 405).

[4] One further consideration would seem to put the question at issue beyond doubt. The only estate vested in the respondent Helen (and in Marion as well) is such as has come to her by means of the agreement with Livermore, and not otherwise. She claims under the will of Henry and as the heir of Charles, Henry's devisee; and the appellant Catherine claims as the widow of Charles. These facts justify us in holding that the respondent Helen is estopped to deny either the validity of Henry's estate or the inheritable nature of her father Charles' estate thereunder. Sherwood v. Vandenburgh, 2 Hill, 303.

The judgment should be modified by striking from the third conclusion of law so much thereof as denies to the appellant Catherine dower in the undivided one-third part of the premises belonging to Helen, and substituting therefor one or more findings in conformity to this opinion, and as so modified the judgment should be affirmed, with costs to the appellant.

CLARKE, J., concurs.

SCOTT, J. I concur with Mr. Justice HOTCHKISS. It was found by the surrogate, and no one excepts to the finding, that John R. Livermore held the legal title to the lands and premises, as trustee, under and by virtue of an agreement between him and Henry P. Lugar, deceased. It was further found that, as a part of the agreement from which the trust resulted, John R. Livermore agreed that after the death of Henry P. Lugar he would distribute the balance of the moneys derived from the rents, issues, and profits, and distribute any interest in said land and premises to which said Henry P. Lugar might be entitled at his death in the manner and to the persons to whom he, the said Henry P. Lugar, might name and appoint in his last will and testament. It is true that under this trust the whole legal estate was vested in Livermore, subject, however, to the execution of the trust. At Henry P. Lugar's death his devisees acquired a legal estate in the property as against all persons except the trustees and those claiming under them. Real Property Law [Consol. Laws, c. 50] § 101; For-

mer Real Property Law, Laws 1896, c. 547; 1 Rev. Stat. 729, § 61. If the terms of the trust as found by the surrogate required Livermore, at Henry P. Lugar's death, to sell the property and distribute the proceeds, as Mr. Justice INGRAHAM assumed that they did, I should agree with him that Charles E. Lugar never had a descendible estate in the real property as such. But that is not the finding. The only money to be distributed was the proceeds of the rents, issues, and profits. As to the land it was to be distributed in specie. It is true that the word "distributed" is not a happy one to describe the process of dividing land among a number of persons, but it will suffice where the clear intention of the testator is that the land itself shall be divided, and that intention seems to me to be clearly evidenced by the terms of the trust as found by the surrogate. I think therefore that upon Henry P. Lugar's death Charles E. Lugar became vested with the equitable title to one-third of the real estate, and to a legal title, as well, good as against every one but the trustee. He had the right then to a conveyance to himself by the trustee, subject of course to making proper provisions to satisfy any claim or lien the trustee had against the property. But the existence of any claim or lien in favor of the trustee did not operate to prevent or postpone the absolute right of Charles E. Lugar to demand a conveyance subject to the satisfaction of the claim or lien, nor did it serve to convert his share of the property from realty into personalty. If I am right in this, it follows that Charles E. Lugar acquired, at his father's death, a descendible equitable title to the real estate, and the instant right to demand a conveyance. If so, the appellant is entitled to dower. Hawley v. James, 5 Paige, 320.

INGRAHAM, P. J. (dissenting). The only question presented on this appeal is whether the appellant, Catherine Lugar, is entitled to dower in certain real property described in the complaint. Catherine Lugar was married to one Charles Lugar in December, 1906, and in July, 1909, Charles Lugar died intestate. To entitle the appellant to dower it must appear that her husband "was seised of an estate of inheritance" during her marriage of the property in question. Real Property Law, chapter 52 of the Laws of 1909 (Consol. Laws, c. 50); Revised Statutes, pt. 2, c. 1, tit. 2, art. 1, § 1. As was said by Judge Gray in Phelps v. Phelps, 143 N. Y. 197, 38 N. E. 280, 25 L. R. A. 625:

"The position of a wife, with respect to her husband's property, is limited by the Revised Statutes, and unless she can bring herself within their limitations, she is without the right to assert any claim to it."

And the question therefore is whether at any time during coverture Charles Lugar was seised of an estate of inheritance in the property in question. The appeal is based upon the judgment roll, and consequently we are confined to the findings of the court at Special Term to determine whether under the facts there found Charles Lugar, the appellant's husband, was seised of an estate of inheritance in this property.

The court found that on the 12th of February, 1890, Emma Gedney and Sarah Ann Gedney, being the owners in fee of certain lands and premises situated in the county of New York, for a valuable consideration to them paid and delivered by Henry P. Lugar, since deceased, and John R. Livermore, one of the defendants herein, duly executed a deed bearing date the 12th day of February, 1890, and delivered the same to the defendant John R. Livermore, whereby they conveyed to him the said land and premises. By the law of this state that conveyance vested the whole title of the land in the defendant Livermore, and he was seised of an estate of inheritance in the land, and by virtue of that conveyance Henry P. Lugar acquired no legal or equitable interest therein. This deed was duly recorded, and the court found that Livermore since the 12th day of February, 1890, has held and now holds the title to the said land and premises under and by virtue of the said deed and has been and now is in possession thereof by virtue of the same. The finding does not state what consideration Lugar paid to Livermore or to the Gedneys upon the conveyance of this property. There is, however, a finding that Livermore paid to the Gedneys the sum of $3,000, as consideration therefor and the land conveyed subject to mortgages aggregating over $14,900. The court then finds that Livermore became so seised and possessed of said land and premises under an express oral agreement made by and between him and the said Henry P. Lugar, whereby the defendant John R. Livermore agreed to take and hold in his own name the title to the said land and premises in trust, to receive the rents, issues, and profits accruing therefrom, pay the expenses of keeping the same in repair, and make necessary and proper improvements thereon, pay the taxes, assessments, and water rents assessed or levied thereon, pay the interest on the two mortgages then a lien thereon, pay off or renew said mortgages or any part thereof at such time or times as circumstances might in his judgment render expedient, and make such other payments, loans, and advances as the said Henry P. Lugar might direct or require, with the right and power, in said Livermore, to sell and convey the said land and premises, and, out of the proceeds of any sale, so to be made by him, and out of the rents, issues, and profits derived therefrom to reimburse himself for all moneys disbursed by him together with interest at the rate of 5 per centum on all unpaid balance due him at the end of each year, and after the death of the said Henry P. Lugar to distribute the balance of any moneys derived from the said rents, issues, and profits, and to distribute any interest in the said land and premises to which said Henry P. Lugar may be entitled at his death in the manner and to the persons to whom he, the said Henry P. Lugar, might name and appoint in his last will and testament.

Certainly Lugar had no estate in this property either legal or equitable. He was seised of no interest in the property by reason of this oral agreement. The statute says that to entitle a wife to dower her husband must have been seised of an estate of inheritance during coverture, and I think it clear that Henry P. Lugar never was seised of an estate of inheritance. Whatever interest he had under such a void trust certainly would not descend to his heirs or devisees. Liv-

ermore remained in possession collecting the rents and profits and making such disposition of them as he pleased until Henry P. Lugar died on September 10, 1895, in the borough of Brooklyn, and left him surviving a widow, a daughter, Charles the appellant's husband, and a grandson. He left a last will and testament duly admitted to probate, whereby he devised his interest in said lands and premises—one-third undivided share thereof to his son Charles the appellant's husband. His son Charles married the appellant on the 20th of December, 1906, and died on the 22d of July, 1909, intestate. The question is whether Charles was seised of an estate of inheritance in this real property before his death. I think it clear he was not. Livermore was seised and possessed of the property during Charles' life. He held it under an oral agreement by which he was authorized to sell and convey the land and premises, and he agreed that out of the proceeds of any sale made by him to reimburse himself for all money disbursed by him with interest, and after the death of Henry P. Lugar "to distribute any interest in the said land and premises to which said Henry P. Lugar may be entitled at his death in the manner and to the persons to whom he, the said Henry P. Lugar, might name and appoint in his last will and testament."

So that the interest of those in whose favor Henry P. Lugar exercised the power of appointment was not to the land, even assuming that this oral agreement was enforceable, but to a distributive share of any interest in the land and premises to which Henry P. Lugar may be entitled at his death. Assuming that this instrument had been in writing and enforceable, the sole remedy of a person in whose favor Henry P. Lugar had exercised the power of appointment would be to compel Livermore to sell the property and distribute its proceeds according to the agreement. It seems to me clear that at no time would Henry P. Lugar or his children have been entitled to a decree compelling Livermore to convey this land either to Lugar or a person in whose favor he exercised the power of appointment. Livermore was seised of the whole of this property. He had advanced a large part of the purchase money; he was in actual possession of it receiving the rents and profits; and the utmost that can be said is that he had, under a contract which was not enforceable as against him, agreed when the property was sold to distribute whatever interest Henry P. Lugar had in it to those in whose favor Henry P. Lugar should direct it to be paid by his last will and testament. One of Charles' children commenced this action to enforce this oral agreement, and, until the court made its finding in this case and entered judgment based thereon, there never was at any time, so far as appears from these findings, any interest in either Henry P. Lugar or his children which could be called an estate either legal or equitable in the property, and at that time appellant's husband was dead. As Judge Gray says in Phelps v. Phelps, supra:

"So far as my examination has gone, I am unable to find in the adjudged cases any support for the proposition that a right to dower can be asserted, except with respect to real property of which the husband was actually seised during his lifetime, or to the actual seisin of which he had a legal right."

Adopting this definition, the appellant's husband must have had during coverture either the actual seisin of this property or a legal right to actual seisin. It seems to me clear he had neither. It is conceded that he had not actual seisin, and it seems to me it must also be conceded, assuming this oral agreement was enforceable, that he had not a legal right to actual seisin. That he could have come into equity and compelled Livermore to exercise the power of sale and distribute the proceeds after paying Livermore's advances was not either actual seisin or a legal right to actual seisin, as I view the condition that existed.

The court, in the decision, having set out the conveyance of the property showing that the legal title was in defendant Livermore, and the oral agreement under which he became seised and possessed of the land and premises, the finding that Henry P. Lugar died "owning an interest in the said land and premises," that said Henry P. Lugar "devised his interest in said land and premises," and that said Charles E. Lugar "died on the 22d of July, 1909, owning a one-third undivided interest in the said land and premises," if taken as findings of fact, would expressly contradict the findings as to the actual conveyances, from which, as before stated, the title to the property is vested in the defendant Livermore. I think these findings can be treated as conclusions, although included in the findings of fact; and, as upon the conceded facts as found by the referee the appellant's husband was never vested with the title to the property, these conclusions can be disregarded.

I think therefore the judgment appealed from was right and should be affirmed.

DOWLING, J., concurs.